# Exhibit 2



March 3, 2023

Via E-Mail [Gary.Dewar@newbalance.com]

Gary Dewar
Associate General Counsel
New Balance Athletics, Inc.
190 Merrimack Street
Lawrence, MA 01843

    Re:    New Balance's Infringement of Nike's U.S. Patent Nos. 8,898,932; 9,907,350; 9,918,511; 9,924,758; 9,986,781; and 8,266,749

Dear Mr. Dewar:

Thank you for your letter dated February 14, 2023, regarding the above-referenced matter. New Balance's non-infringement and invalidity contentions are incorrect for a number of reasons, including the reasons we detail below. New Balance's accused shoes and their methods of manufacture do not differ at all, let alone substantially, from Nike's claims.

Nike requests that New Balance immediately cease-and-desist making, using, offering for sale, selling, and importing the accused shoes. Alternatively, if you would like to discuss an amicable resolution, please contact me by no later than March 7, 2023. If New Balance does not immediately cease-and-desist, or if we do not hear from you by March 7, 2023, we will understand New Balance does not wish to discuss the terms of a resolution and we will proceed accordingly.

    i.    U.S. Patent No. 8,898,932 ("'932 Patent")

New Balance's non-infringement contentions are incorrect for at least two reasons.

First, you incorrectly contend Nike's claims require a skin layer that is "directly thermally bonded to the underlying knit component and that is not attached to the knit component by stitching or by the use of adhesives or cement." The claims do not exclude the use of adhesives. In fact, the specification expressly discloses that, "[i]n some situations . . . stitching or adhesives may be utilized to supplement the thermal bond or the joining of elements through thermal bonding." '932 Patent, 12:15–17.



Gary Dewar
February 28, 2023
Page 2

Nike did not disclaim the use of adhesives during prosecution. Nike distinguished U.S. Patent No. 2,147,197 ("Glidden") because Glidden does not teach - or even make reference to—thermal bonding. August 27, 2014, Reply to Office Action at 8–9. As Nike explained, Glidden teaches a textile upper with a rubber part that is "cemented" to the textile upper. *Id.* at 8. Nike also explained that Glidden taught away from thermal bonding because "[i]f one were to attempt to thermally bond the rubber part 28 onto the textile upper 27, there would likely be a large amount of heated rubber that would be in a molten or semi-molten state." *Id.* at 9. As such, "[i]t would be difficult, if not impossible, to contain the rubber, to prevent the heated rubber from unintentionally running away from the textile upper 27, and/or to ensure that the rubber part 28 covers the desired portions of the textile upper 27." *Id*. Nike continued that "even assuming that the rubber part 28 could be thermally bonded to the textile upper 27, the bulkiness of the rubber part 28 would likely cause the rubber part 28 to delaminate from the textile upper 27 when upper 27 flexes." *Id.*

Nike's remarks distinguishing Glidden do not narrow the claims to exclude the use of adhesives. Nike never argued a thermally bonded skin layer could not also include the use of adhesives as disclosed in the specification. Thus, New Balance's use of thermal bonding and adhesives to attach the outer layer of the accused shoes to the uppers does not avoid the claims.

Second, you incorrectly contend New Balance "does precisely what was taught by" Glidden. We have reproduced Figures 6 and 7 of Glidden below. As shown in these figures, Glidden taught an "integral rubber covering 28" that included "sole 29." New Balance's accused shoes do not have an integral rubber covering that includes a sole.





Gary Dewar
February 28, 2023
Page 3

    **ii.    U.S. Patent Nos. 9,907,350 ("'350 Patent"), 9,918,511 ("'511 Patent"), 9,924,758 ("'758 Patent"), and 9,986,781 ("'781 Patent")**

New Balance's non-infringement contentions are incorrect for at least three reasons.

First, you incorrectly contend Nike's claims preclude any cutting of the textile element, including post-knitting cutting as a finishing process, regardless of whether the textile element contains uncut edges. Neither the plain language of the claims nor the Federal Circuit's holding in *Nike Inc. v adidas AG*, No. 2014-1719 (Fed. Cir. Feb. 11, 2016) support that misinterpretation of the claims.

Second, you incorrectly contend the upper components of New Balance's accused shoes are formed "by using uppers that have [] been cut from a larger textile web." As shown in the examples below, the upper components of the accused shoes have uncut edges.



In any event, even if the upper components of New Balance's accused shoes are all cut from a larger textile web as you incorrectly contend, the accused shoes infringe at least the claims of Nike's '749 Patent discussed below.

Third, you incorrectly contend New Balance's accused shoes do not include apertures "formed by omitting stitches" because the accused shoes utilize tuck stitching and/or a



Gary Dewar
February 28, 2023
Page 4

racking and transferring process in the locations we identified as containing apertures. But each of those processes are methods for creating apertures by omitting stitches.

### iii.      U.S. Patent No. 8,266,749 ("'749 Patent")

New Balance's non-infringement and invalidity contentions are incorrect for at least two reasons.

First, you incorrectly contend Nike's claims require "rough stitching" or "ribbed knit" textures in the upper of the shoe that differ from a "smooth" texture in the rest of the upper. The claims do not require differing textures in the upper of the shoe. Rather, the claims require one knitted texture on the knitted textile element that "differs from a knitted texture in the surrounding knitted textile structure" from which the knitted textile element is removed. '749 Patent, claim 1.

In any event, even if Nike's claims require differing textures in the upper of the shoe as you incorrectly contend, New Balance's accused shoes still infringe. The specification provides many examples of differing textures, including a "texture 46' that is generally smooth"; a "texture 47' that is a plurality of longitudinal ribs"; a "texture '47", which is generally rough in comparison with first texture 46'; and a "texture 48" [which] is formed to include a plurality of apertures that extend through textile element 40'." 9:7-10; 9:32-37; 9:47-49. As shown in the examples below, the uppers of New Balance's accused shoes have two or more of those types of differing textures.



NIKE, INC.  ONE BOWERMAN DRIVE  BEAVERTON, OREGON  97005-6453      BRIAN.FOGARTY@NIKE.COM



Gary Dewar
February 28, 2023
Page 5



Second, you incorrectly contend Nike's claims are invalid based on U.S. Patent No. 6,299,962 ("Davis"), alone or in combination with U.S. Patent No. 1,841,701 ("Berger"). Nike's claims have successfully withstood numerous invalidity challenges at the PTAB and in federal courts. Davis and Berger are no better than the prior art references Nike defeated in those prior challenges. In fact, they are less relevant. Davis is not related to knit fabrics or knit footwear. Berger is directed to creating delicate transparent areas using silk or rayon and discloses the production of continuous fabrics—not the production of elements. Neither reference discloses the limitations of Nike's claims.

Sincerely,

Brian M. Fogarty
VP, Global Litigation and Investigations