IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NIKE, INC.,

        Plaintiff,

   v.

NEW BALANCE ATHLETICS, INC.,

        Defendant.

Civil Action No. 1:23-cv-12666-JEK

ORAL ARGUMENT REQUESTED

**DEFENDANT NEW BALANCE ATHLETICS, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

   A.   New Balance Athletics, Inc. ........................................................................ 2

   B.   The Asserted Patents and Technology at Issue ........................................... 3

   C.   The Prior IPR and Federal Circuit Opinion Regarding the Claim Language at Issue ..... 4

   D.   The Parties' Pre-Suit Communications ....................................................... 6

   E.   Nike's Complaint Against New Balance for Patent Infringement ................ 7

III.  LEGAL STANDARD .......................................................................................... 7

IV.   ARGUMENT ....................................................................................................... 9

   A.   Accepting the Pleaded Facts as True, the Accused Products Do Not Literally Infringe
        the Challenged Patents ................................................................................ 9

      1.   All Claims of the Challenged Patents Require A Textile Element Where the Edges
           Have Not Been Removed, or Cut, From a Surrounding Textile Structure ............. 9

      2.   The Complaint Fails to Plead Facts Sufficient to Show That The Alleged Textile
           Elements in the Accused Products Have Not Been Removed, or Cut, From a Surrounding
           Textile Structure ................................................................................... 14

   B.   Accepting the Pleaded Facts As True, the Accused Products Cannot Infringe Under the
        Doctrine of Equivalents ............................................................................. 17

      1.   Interpreting the Challenged Patents to Cover the Accused Products Would Vitiate the
           Claim Language by Allowing the Opposite of What is Claimed. .......................... 17

      2.   Courts Routinely Grant Motions to Dismiss on Allegations of Infringement Under the
           Doctrine Of Equivalents ......................................................................... 18

   C.   Amending the Complaint Would Be Futile ................................................ 19

V.    CONCLUSION .................................................................................................. 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Woods Hole Oceanographic Inst.*,
    553 F.3d 114 (1st Cir. 2009) ................................................................19

*Adams v. Wells Fargo Bank*,
    No. 17-12092-FDS, 2018 WL 6067508 (D. Mass. Nov. 20, 2018).........................19

*ALD Social LLC v. Verkada, Inc.*,
    654 F. Supp. 3d 972, 979 (N.D. Cal. 2023) ......................................................15, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................8

*Atlas IP. LLC v. Southern Co.*,
    C.A. No. 17-cv-20273, 2017 WL 4993378 (S.D. Fla. 2017).................................19

*Becton, Dickinson and Co. v. Tyco Healthcare Grp.*,
    616 F.3d 1249 (Fed. Cir. 2010)............................................................................14

*Beddal v. State St. Bank & Trust, Co.*,
    137 F.3d 12 (1st Cir. 1998)................................................................................9, 10

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ............................................................................8, 15

*Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007)..............................................................................8

*CTD Networks LLC v. Microsoft Corp.*,
    No. W-22-CV-01049-XR, 2023 WL 5417141 (W.D. Tex. Aug. 22, 2023)............................9

*Cumberland Pharmaceuticals Inc. v. Sagent Agila LLC*,
    C.A. No. 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013) ...................................15, 18

*Duncan Parking Tech., Inc. v. IPS Group, Inc.*,
    914 F.3d 1347 (Fed. Cir. 2019).............................................................................18

*DUSA Pharms., Inc. v. Biofrontera Inc.*,
    C.A. No. 18-10568-RGS, 2019 WL 1208805 (D. Del. Mar. 14, 2019) ..................................13

*Eagle Pharm., Inc. v. Hospira, Inc.*,
    424 F. Supp. 3d 355 (D. Del. 2019)......................................................................19

*Gemalto S.A. v. HTC Corp.*,
    754 F.3d 1364 (Fed. Cir. 2014).................................................................13

*Golan v. Pingel Enter., Inc.*,
    310 F.3d 1360 (Fed. Cir. 2002)...................................................................8

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*,
    476 F. Supp. 3d 532 (W.D. Tex. 2020)......................................................18

*Markman v. Westview Instruments*,
    517 U.S. 370 (1996).................................................................................5, 12

*Nike, Inc. v. Adidas AG*,
    812 F.3d 1326 (Fed. Cir. 2016)........................................................... *passim*

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003).................................................................12

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018)......................................................9, 15, 17

*Polymer Indus. Prods. Co. v. Bridgestone, Inc.*,
    347 F.3d 935 (Fed. Cir. 2003).....................................................................7

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l., Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016).................................................................18

*Rivera v. Centro Medico de Turabo, Inc.*,
    575 F.3d 10 (1st Cir. 2009).........................................................................9

*Robinson v. Nat'l Collegiate Student Loan Tr.*,
    C.A. No. 20-cv-10203, 2021 WL 1293707 (D. Mass. April 7, 2021).....................8

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)....................................................................................18

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993)................................................................9, 11, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................7, 8, 9

Federal Rule of Civil Procedure 12(c) .......................................................18

I.    **INTRODUCTION**

This is a patent infringement case in which Nike, Inc. ("Nike") accuses New Balance Athletics, Inc. ("New Balance") of infringing nine patents directed to footwear. With respect to at least three of the asserted patents, Nike's infringement allegations are not plausible and should be dismissed. A key limitation in the claims subject to this motion recites explicitly that the textile element in shoe uppers *cannot be cut from a larger web of surrounding textile structure*—a process known as knit to cut—and must instead be knit to shape.[1]

The meaning of this key claim limitation was confirmed by the Federal Circuit and should be applied here. The Federal Circuit held that an interpretation that included a flat knit textile element that has been cut from a larger textile web would contradict the express claim language. Nike itself agrees with the Federal Circuit's understanding of the claim limitation at issue. However, Nike's infringement allegations here squarely contradict the claim language at issue. In particular, Nike's complaint alleges that shoe uppers made from a textile element that *is cut from a larger web of surrounding textile structure*, infringes claims that Nike has argued, and the Federal Circuit has found, do not cover shoes so manufactured. Nike's complaint alleges merely that a small portion of the accused textile element is free from material from which it is cut, but ignores that the asserted claims require the *edges* (i.e., all of the edges) of the textile element to be free of surrounding textile structure such that the *edges* are not surrounded by textile structure from which the textile element must be removed.

---

[1] In the context of this motion, "knit to shape" is a manufacturing process by which a textile is knitted into its final shape and does not need to be cut into its final form. "Knit to cut" is a manufacturing process that requires the textile material to be cut into its final form after the knitting is complete.

Nike's complaint fails to plead facts that, if true, would prove infringement of the asserted claims because it knows that it cannot do so. New Balance wrote to Nike in February 2023—11 months ago—and explained that the textile elements in the accused shoe uppers are cut from larger webs of surrounding textile structure and therefore cannot possibly infringe the '350, '511, and '758 Patents subject to this motion. New Balance followed up with Nike regarding this issue in additional correspondence, as well as during an August 2023 in-person meeting between the parties. Nike has never substantively responded to New Balance's explanation that the Accused Products cannot infringe the patents at issue, nor has Nike even tried to justify the squarely contradictory position that its complaint takes regarding the patents at issue here.

The Nike infringement allegations subject to this motion conflict directly with the language of the asserted claims, the Federal Circuit's ruling regarding that claim language, and Nike's own prior arguments regarding the same. Try as it may, Nike cannot change the language of the claims or the relevant facts regarding the manufacture of the Accused Products. Nike's infringement allegations on the patents subject to this motion should be dismissed with prejudice as a result.

## II.   FACTUAL BACKGROUND

### A.   New Balance Athletics, Inc.

New Balance has been in the footwear industry in Massachusetts since the early 1900s. The company's history began with William Riley's design, manufacture, and sale of a flexible footwear arch insert in 1906. The company delivered its first running shoe in 1938 to the Boston Brown Bag Harriers, a Boston running club. With over a century of experience in the design and manufacture of footwear, New Balance prides itself on its rich history, commitment to quality, and innovation. With its generational roots in the footwear industry, New Balance continues to use the traditional shoe designs and methods of manufacture that it has used for generations while developing its own innovative technology. New Balance develops and manufactures the Accused

Products using a combination of long-standing designs and manufacturing processes in combination with new, innovative New Balance technology.

**B.      The Asserted Patents and Technology at Issue**

Nike filed its complaint against New Balance on November 6, 2023, alleging infringement of nine patents: U.S. Patent Nos.: 8,266,749 (the "'749 Patent"), 8,898,932 (the "'932 Patent"), 9,060,562 (the "'562 Patent"), 9,510,636 (the "'636 Patent"), 9,730,484 (the "'484 Patent"), 9,907,350 (the "'350 Patent"). 9,918,511 (the "'511 Patent"), 9,924,758 (the "'758 Patent"), and 11,707,105 (the "'105 Patent") (collectively, the "Asserted Patents").  D.I. 1 at ¶ 11.

The Asserted Patents are related to footwear and methods of manufacturing them with a focus on knit textile elements.  The asserted claims generally recite that the knit textile elements are incorporated into the shoe "uppers."  *See e.g.*, '758 Patent at claim 1 (directed to a "[a]n upper for an article of footwear, the upper comprising a knit textile element . . . .").  Athletic footwear typically has two primary elements, an upper and a sole structure.  D.I. 1-11 (hereinafter "'758 Patent") at 1:39–40.  Annotated figure 1 of the '758 Patent is depicted below with the upper highlighted in yellow and the sole structure highlighted in green.



'758 Patent at Fig. 1 (annotated).  The upper generally provides a covering for the foot that securely receives and positions the foot with respect to the sole structure.  '758 Patent at 1:40–42.

Relevant to this motion are Nike's infringement allegations on the '350, '511, and '758 Patents (referred to herein as the "Challenged Patents"), which New Balance seeks to dismiss.  The

Challenged Patents are related and are all divisions of U.S. Patent Application No. 10/791,289, now U.S. Patent No. 7,347,011 (the "'011 Patent"), filed on March 3, 2004.  The Challenged Patents share a common specification—which is also shared with the '011 Patent.  Claim 1 of the '758 Patent is representative of the challenged claims and recites:

> 1. An upper for an article of footwear, the upper comprising:
>
> a knit textile element having <u>knit edges free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed</u>, the knit element at least partially defining a forefoot region and a heel region and having a longitudinal axis extending between the forefoot region and the heel region, wherein knit columns of the knit textile element have a knitting direction parallel to the longitudinal axis between the forefoot region and the heel region;

'758 Patent at claim 1 (emphasis added).  The underlined element of claim 1 is central to New Balance's motion and appears in near identical form in claim 1 of the '350 and '511 Patents and requires that the uppers be knit.  *See* D.I. 1-10, the '511 Patent at claim 1; D.I. 1-9, the '350 Patent at claim 1.

Nike asserts that the Challenged Patents are directed to what Nike calls its "Flyknit" technology that provides knitted upper components in footwear.  D.I. 1 at ¶¶ 1, 11.  Nike alleges that the Challenged Patents provide numerous benefits over the prior art including the reduction of "materials and waste" in the manufacturing process.  D.I. 1 at ¶ 1.

### C.     The Prior IPR and Federal Circuit Opinion Regarding the Claim Language at Issue

The related '011 Patent was the subject of an *Inter Partes* Review ("IPR") at the Patent Trial and Appeal Board ("PTAB"), which arose in connection with district court litigation filed by Nike against Adidas.  Adidas sought IPR of the '011 Patent seeking to invalidate claims 1–46.  *See Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1329 (Fed. Cir. 2016).  During the IPR, Nike filed a

motion to amend the claims of the '011 Patent in which it requested the cancellation of claims 1–

46 and proposed to substitute claims 47–50.  Proposed claim 47 recited:

> An article of footwear comprising an upper incorporating a flat knit textile element, the flat knit textile element
>
> (1) having flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the textile element must be removed, some of the flat knit edges joined together to form an ankle opening in the upper for receiving a foot, the ankle opening having an edge comprised of one of the flat knit edges; and
>
> (2) having a first area and a second area with a unitary construction, the first area being formed of a first stitch configuration, and the second area being formed of a second stitch configuration that is different from the first stitch configuration to impart varying properties to the textile element; and a sole structure secured to the upper.

*Id.* at 1331.  The Board granted Nike's request to cancel claims 1–46 but denied the motion to

substitute claims 47–50 because "Nike failed to meet its burden of establishing patentability of

substitute claims 47–50."  *Id*. at 1329.  Nike appealed the Board's denial to substitute claims 47–

50 to the U.S. Court of Appeals for the Federal Circuit.  In reviewing the Board's decision on the

patentability of claims 47–50, the Federal Circuit addressed the added limitations in the claims

namely the recitation of the flat knit textile element of the uppers having "flat knit edges free of

surrounding textile structure."  *Id*. at 1335.  Describing the meaning of the additional limitations

as a matter of law,[2] the Federal Circuit held:

> This claim language demonstrates that the scope of this claim is limited to a flat-knit textile element where the flat knit edges have not been removed, or cut, from a surrounding textile structure.  An interpretation that included a flat-knit textile element that has been cut from a larger textile web would contradict the express claim language.

---

[2] The interpretation of claim language in a patent is a matter of law solely for the Court.  *See Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) ("the construction of a patent, including terms of art within its claim, is exclusively within the province of the court.").

*Id.* at 1346 (emphasis added).  Nike did not further appeal the Federal Circuit's decision.

### D.    The Parties' Pre-Suit Communications

Nearly a year before Nike filed the complaint here, Nike sent New Balance a letter accusing thirteen New Balance shoes of infringing six Nike patents, including the Challenged Patents.  *See* D.I. 1-1.  As discussed in Exhibit 2 to the complaint[3], New Balance responded to Nike's letter on February 14, 2023, explaining that the accused New Balance shoes do not infringe any of the asserted Nike patents, including the Challenged Patents.  *See* Ex.[4] 1, Feb. 14, 2023, Letter from G. Dewar to B. Fogarty.  In relevant part, New Balance noted that the accused shoes do not infringe the Challenged Patents because they are:

> not manufactured by using uppers that have not been cut from a larger textile web.  To the contrary, the upper components incorporated into the identified New Balance shoes, and shoes within the same category, are formed as an oversized textile element that is then cut for incorporation into the shoes.

*Id*.  New Balance also informed Nike that it had not identified *any* shoes that had knit uppers manufactured without cutting the uppers from larger surrounding textile structure.  *Id*.  On March 3, 2023, Nike responded to New Balance's substantive positions with nothing more than conclusory assertions that New Balance's positions were "incorrectly contended."  *See generally*, D.I. 1-2.

The parties exchanged additional communications between March and August 2023, met on August 24, 2023 to attempt to resolve the matter, and exchanged additional correspondence in September 2023.  Throughout the parties' correspondence, Nike never substantively addressed the lack of any plausible allegation that the Accused Products could infringe the Challenged Patents.

---

[3] *See* D.I. 1-2 at 2 ("[t]hank you for your letter dated February 14, 2023").
[4] Ex. [_] refers to exhibits attached to the Declaration of Amadou Diaw ("Diaw Decl.") submitted concurrently herewith.

Instead, Nike alleged the infringement of four additional patents and identified five additional accused shoes. *See* D.I. 1-3. And then, on November 6, 2023, Nike filed the instant suit against New Balance reiterating its infringement assertions regarding the Challenged Patents that are, as Nike knows, fundamentally inconsistent with the claim language at issue and the manner in which the Accused Products are manufactured.

### E.   Nike's Complaint Against New Balance for Patent Infringement

As relevant to this motion, Nike alleges New Balance directly infringes the Challenged Patents literally or under the doctrine of equivalents by selling the following accused footwear: the Fresh Foam X 1080 v12, Fresh Foam X Vongo v5, Fresh Foam X 1080 UNLACED, Fresh Foam X Evoz v3 Slip Resistant, Tekela v4 Pro FG, Tekela v4 Pro Low FG, Furon V7 Pro FG, Furon V6+ Pro FG, Tekela v4 Magia FG, FuelCell MD-X, FuelCell SuperComp Trainer, and FuelCell SuperComp Elite v3 (the "Accused Products").

Nike's complaint does not attempt to engage with the lack of any plausible infringement assertion regarding the Challenged Patents. In the claim charts attached to its complaint, Nike alleges merely that small portions of the knit uppers meet the "free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed" limitation, but it completely ignores that other edges of the identified textile element in the shoe uppers are in fact removed from surrounding textile structure. As explained in detail below, the textile elements in the knit uppers of the shoes identified by Nike are in fact surrounded by textile structure from which the textile elements are removed, so the Accused Products cannot infringe in view of the claim language.

### III.   <u>LEGAL STANDARD</u>

The question of whether to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is a procedural question and therefore the law of the First Circuit governs. *See Polymer*

*Indus. Prods. Co. v. Bridgestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003).  Because "Federal Circuit law applies to causes of action within the exclusive jurisdiction of the Federal Circuit"— *i.e.*, patent infringement claims—courts look to Federal Circuit precedent for the underlying substantive law within the framework of the Rule 12(b)(6) standards established by the regional circuit.  *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1368 (Fed. Cir. 2002) (collecting cases); *see also Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (stating that Federal Circuit law applies where an issue "pertains to or is unique to patent law").

    "In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts" and draw all reasonable inferences in favor of the non-moving party.  *Robinson v. Nat'l Collegiate Student Loan Tr.*, C.A. No. 20-cv-10203, 2021 WL 1293707, at *2 (D. Mass. April 7, 2021) (citing *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019)).  While the Court must accept factual allegations as true, it is not required to accept as true allegations that amount to legal conclusions, conclusory statements, "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (quoting *Twombly*, 550 U.S. at 557) (quotations omitted).

    While a patentee need not prove its case at the pleading stage, "a patentee may subject its [infringement] claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021) A plaintiff may fail to state a claim, even when sufficient factual statements are plead, where: "(1)

the infringement allegation rests on an implausible claim construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018), or (2) the factual allegations are actually inconsistent with and contradict infringement." *CTD Networks LLC v. Microsoft Corp.*, No. W-22-CV-01049-XR, 2023 WL 5417141, at *5 (W.D. Tex. Aug. 22, 2023) (citing *Bot M8 LLC*, 4 F.4th at 1354).

Generally, a court will not consider documents outside of the pleadings in a motion to dismiss. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). But the First Circuit makes a "narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." *Watterson*, 987 F.2d at 3–4 (collecting cases). For instance, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged) that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddal v. State St. Bank & Trust, Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

## IV.    ARGUMENT

### A.    Accepting the Pleaded Facts as True, the Accused Products Do Not Literally Infringe the Challenged Patents

#### 1.    All Claims of the Challenged Patents Require A Textile Element Where the Edges Have Not Been Removed, or Cut, From a Surrounding Textile Structure

Before the upper is sewn and attached to the sole of a shoe to form the shoe profile, as is depicted in annotated Figure 1 (*supra* at 3), the upper is a flat piece of material as depicted below in annotated Figure 8 of the '758 Patent.



Figure 8

'758 Patent at Fig. 8 (annotated).  The "textile element" referenced in the claims is identified as element 40 in the Figure—the entirety of the depicted textile material.  *See* '758 Patent at 6:13–16.  The patent explains in relevant part, "[t]extile element 40 exhibits the general shape depicted in FIG. 8 prior to the formation of seams 51–54.  Following formation of seams 51–54, however, textile element 40 exhibits the shape of upper 30 depicted in FIGS. 2–7."  *Id.* (emphasis added).  Edges 41–44 are also highlighted in the figure and described in further detail below.

Figure 2 depicts the shape of upper 30 (from a profile view) following the formation of referenced seams 51–54 depicting seams 53 and 54 in the figure.



'758 Patent at Fig. 2 (annotated).  Figure 3 depicts the form of the same upper from a Birdseye

view this time showing seams 51, 52, and 54.



'758 Patent at Fig. 3 (annotated).  The '758 Patent recites that, "[s]eams 51–54 are formed by

securing various edges of textile element 40 together."  *Id.* at 6:16–18 (emphasis added).  The

patent describes in detail that:

> seam 51 is formed by securing an edge 41 *a* with an edge 41*b*; (2)
> seam 52 is formed by securing an edge 42*a* with an edge 42*b*; (3) a
> first portion of seam 53 is formed by securing an edge 43*a* with an
> edge 43*b*; (4) a second portion of seam 53 is formed by securing an
> edge 43*c* with an edge 43*d*; (5) a first portion of seam 54 is formed
> by securing an edge 44*a* with an edge 44*b*; and (6) a second portion
> of seam 54 is formed by securing an edge 44*c* with an edge 44*d*.

11

*Id.* at 6:18–26 (referring to annotated Fig. 8 (*supra* at 10)).  The patent claims require that the described edges, must be "<u>free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed</u>." '758 Patent at claim 1.

Indeed, each of the independent claims of the Challenged Patents recites an upper for an article of footwear comprising a textile element "having <u>[flat knit/knit] edges free of surrounding textile structure such that the [flat knit/knit] edges are not surrounded by textile structure from which the [flat knit textile/textile] element must be removed</u>."  *See* Challenged Patents at claim 1 (emphasis added).  The challenged claims therefore require that the textile element be knit to shape—*i.e.*, formed from components that are knitted directly into a specific shape—and cannot be cut to shape from a larger textile element.  *See, e.g.*, '758 Patent at 6:63–7:20.

The meaning of the claim language at issue was confirmed by the Federal Circuit—as a matter of law—and is binding legal precedent here.  *See Markman*, 517 U.S. 370, 372.  Addressing the proposed '011 Patent's recitation of the flat knit textile element having "flat knit edges free of surrounding textile structure," the Federal Circuit held: "the scope of this claim is limited to a flat-knit textile element where the *flat knit edges have not been removed, or cut, from a surrounding textile structure*."  *Nike*, 812 F.3d at 1347 (emphasis added).  Critically, the Federal Circuit held, "[a]n interpretation that included a flat-knit textile element that has been cut from a larger textile web would contradict the express claim language."  *Id.*  This is precisely the interpretation that Nike must rely on in order to allege infringement here.  It has already been expressly rejected by the Federal Circuit.  It should be rejected again by this Court.

Indeed, courts must "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."  *Omega Eng'g, Inc. v. Raytek*

*Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).  This is particularly true where—as here—"the same claim term [] appears in related patents supported by the same specification.  And nothing in the specification compels a different reading of the term across the patent."  *DUSA Pharms., Inc. v. Biofrontera Inc.*, C.A. No. 18-10568-RGS, 2019 WL 1208805, at *7 (D. Del. Mar. 14, 2019). Accordingly, Nike cannot attempt to depart from the Federal Circuit's prior understanding of the claim language at issue.

In addition to conflicting with the language of the claims and the Federal Circuit's prior ruling, Nike's assertion in this case is fundamentally at odds with its own prior arguments to the Federal Circuit.  In connection with the *Nike, Inc. v. Adidas* appeal, Nike argued that: **the term "flat knit edges" could not reasonably be construed to encompass "cut" edges** and that "**the '011 patent actually discloses knit-to-shape uppers.**"  Ex. 2, Reply Brief For Appellant Nike, Inc. at 22–23, Nike, Inc. v. Adidas AG, 812 F.3d 1326 (Fed. Cir. 2016) (No. 2014-1719) (emphasis added).  The Federal Circuit agreed.  *Nike*, 182 F.3d at 1347.  To the extent that it attempts to argue otherwise, Nike's arguments to the Federal Circuit on the '011 Patent are binding on Nike.  *See Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1371 (Fed. Cir. 2014) (applying patentee's arguments regarding a limitation equally across related patents).  Especially where Nike distinguished its claimed technology from "prior art materials, *where the shoe upper was cut from a larger web of material*, thus requiring additional cutting processes and resulting in significant wasted material."  Ex. 3, Brief For Appellant Nike, Inc. at 2, Nike, Inc. v. Adidas AG, 812 F.3d 1326 (Fed. Cir. 2016) (No. 2014-1719).

The '011 Patent is a grandparent to the Challenged Patents.  The patents share the same specification and—as relevant to this Motion—they recite identical claim language in relevant

part.  *Supra* at 4–5.  Nike should be estopped from seeking a different construction of the claim

language at issue because the scope of this claim language was already litigated in the *Adidas* case.

> 2. <u>The Complaint Fails to Plead Facts Sufficient to Show That The Alleged
> Textile Elements in the Accused Products Have Not Been Removed, or
> Cut, From a Surrounding Textile Structure</u>

Nike fails to plead that the recited "edges" are "free of surrounding textile structure such

that the knit edges are not surrounded by textile structure from which the textile element must be

removed."  Nike cherry picks a small portion of the upper and identifies it as having "knit to shape

edges," but Nike's complaint ignores the other edges of the textile element which—as recited by

the claims—must also be "free of surrounding textile structure," but in fact are not.

Nike's failure to sufficiently plead infringement in this case is no doubt due to its

knowledge that the recited "edges" in the Accused products are *not* "free of surrounding textile

structure."  Nike knows that the textile elements in the uppers of the Accused Products are cut

from surrounding textile structure because New Balance told it so.  Ex. 1 at 2–3.  New Balance's

disclosure should have ended Nike's inquiry because "[a]n interpretation [of this claim language]

that includes a flat-knit, textile element that has been cut from a larger textile web would contradict

the express claim language."  *Nike*, 812 F.3d at 1346.  Instead, New Balance's disclosure did not

end Nike's inquiry.  Nike simply ignored it and pressed ahead with its baseless assertion of the

Challenged Patents.  Nike fails to sufficiently plead that the Accused Products infringe the

Challenged Patents and its pleading should be dismissed as a result.

To establish literal infringement, "every limitation set forth in a claim must be found in an

accused product, exactly.  Thus, if any claim limitation is absent from the accused device, there is

no literal infringement as a matter of law."  *Becton, Dickinson and Co. v. Tyco Healthcare Grp.*,

616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal quotation marks, citations, and alterations omitted).

Even if sufficient factual statements are plead, a claim for infringement may be dismissed where

the infringement allegation rests on an implausible claim construction, or "the factual allegations are actually inconsistent with and contradict infringement." *Bot M8*, 4 F.4th at 1354.

Courts routinely dismiss allegations of patent infringement where—as here—the Accused Products are directly contrary to the recited claims.  For example, in *Cumberland Pharmaceuticals Inc. v. Sagent Agila LLC*, the asserted patent covered a formulation "free from a chelating agent," yet defendant's "product contain[ed] EDTA, which is 'a chelating agent.'"  C.A. No. 12-825-LPS, 2013 WL 5913742, at *1 (D. Del. Nov. 1, 2013).  The court found there was "no reasonable view of the facts pled in Cumberland's Complaint that would support a claim for relief."  *Id*. at *2.

In *Ottah*, the patentee's complaint asserted that the claim's recited "book holder" covered a "camera holder."  *Ottah*, 884 F.3d at 1139.  The district court's order dismissing the plaintiff's complaint was affirmed by the Federal Circuit finding that the patent was limited to a book holder—as set forth by the asserted claims—and could not be found to cover a camera holder or any of a camera's components or functions because there was no such disclosure in the patent specification or prosecution history.  *Id.* at 1141–42.  Other courts have held similarly.  For example, in *ALD Social LLC. V. Verkada, Inc.*, the claims covered a system which determined crowd risk based on tracking wireless devices.  654 F. Supp. 3d 972, 979 (N.D. Cal. 2023).  The plaintiff accused of infringement a product that counted the number of people in a frame—not wireless devices as required by the claim language.  The court dismissed the infringement allegations for failing to state a claim for literal infringement because the claim language required the tracking of "wireless devices" not "people."  *Id.*

The identified textile element in Nike's complaint *is cut* from surrounding textile structure and its edges *are* surrounded by textile structure from which the textile element must be removed.  D.I. 1-2 at 4 (citing Ex. 1 at 2–3).  Nike's complaint completely ignores that the textile elements

15

identified in Nike's claim charts as satisfying the relevant claim limitation has *edges that are cut from surrounding textile structure*.  For example, Nike's infringement allegations for the Fresh Foam X 1080 v12 focus solely on a small portion of the knit uppers as having "knit to shape edges":



D.I. 1-20 at 9.  But Nike simply ignores the rest of the shoe upper that includes *knit to cut* edges that are surrounded by textile structure from which the textile element must be removed.  The following annotated figure from Nike's complaint demonstrates the problem:



D.I. 1 at 5.  The edges of the textile element in the upper that are connected to the sole of the shoe, identified in yellow highlighting in the above image from Nike's complaint, are knit to cut edges cut from surrounding textile structure and, therefore, fundamentally do not practice the asserted claims of the Challenged Patents.  In reference to annotated Figure 8 above (*supra* at 10), Nike's

complaint only identifies edge 45 as being present in the accused footwear, but completely ignores the other edges of the accused product's upper, including any edges that would correlate to edges 41-44 in Figure 8.

Nike ignores the other edges of the accused textile element because it *knows* that other edges do not satisfy the claim limitations.  Edges ignored by Nike *do have* surrounding textile structure from which they are cut—they are knit to cut, not knit to finish as required by the asserted claims.  Ex. 1 at 2–3.  New Balance's disclosure should have ended Nike's inquiry because "[a]n interpretation [of this claim language] that includes a flat-knit, textile element that has been cut from a larger textile web would contradict the express claim language."  *Nike*, 812 F.3d at 1346. Instead, New Balance's disclosure did not end Nike's inquiry.  Nike simply ignored it and pressed ahead with its baseless assertion of the Challenged Patents.  Nike fails to sufficiently plead that the Accused Products infringe the Challenged Patents and its pleading should be dismissed as a result.  *See Ottah*, 884 F.3d at 1142; *ALD Social*, 654 F.Supp. 3d at 982.

**B.    Accepting the Pleaded Facts As True, the Accused Products Cannot Infringe Under the Doctrine of Equivalents**

1.    Interpreting the Challenged Patents to Cover the Accused Products Would Vitiate the Claim Language by Allowing the Opposite of What is Claimed.

In order for the Challenged Patents to cover the Accused Products, the scope of the claims would need to be expanded to encompass uppers including textile elements that are cut from surrounding textile material.  This interpretation would render part of the claim language irrelevant and is inconsistent with Nike's prior position.  For at least this reason, the doctrine of equivalents *cannot* be applied to save Nike's claims.  Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Warner–Jenkinson Co. v. Hilton Davis Chem.*

17

*Co.*, 520 U.S. 17, 21 (1997) (citation omitted).  "But the doctrine of equivalents cannot be used to effectively read out a claim limitation . . . because the public has a right to rely on the language of [the] claims."  *Duncan Parking Tech., Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) (citation omitted).

In fact, "'if a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claimed element, then the court should rule that there is no infringement under the doctrine of equivalents.'"  *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l., Inc.*, 843 F.3d 1315, 1344 (Fed. Cir. 2016) (quoting *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).  If the textile element of the uppers in the Accused Products that have edges cut from a surrounding textile material are found to infringe under the doctrine of equivalents, then the limitation of "[flat/knit] edges free of surrounding textile structure such that the [flat/knit] edges are not surrounded by textile structure from which the [flat/knit] textile element must be removed" is rendered void.  *See e.g.*, '758 Patent at claim 1.  Therefore, as a matter of law and common sense, the Accused Products cannot infringe under the doctrine of equivalents.

### 2.   Courts Routinely Grant Motions to Dismiss on Allegations of Infringement Under the Doctrine Of Equivalents

Pleadings of infringement under the doctrine of equivalents are routinely dismissed where a finding of infringement under the doctrine of equivalents "would vitiate . . . the claim limitation."  *Cumberland Pharmaceuticals*, 2013 WL 5913742, at *3  (granting defendant's motion to dismiss for failure to state a claim); *see also Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 544–45 (W.D. Tex. 2020) (dismissing claims under Rule 12(c) based on the principle of claim vitiation); *Atlas IP. LLC v. Southern Co.*, C.A. No. 17-cv-20273, 2017 WL 4993378, at *8 (S.D. Fla. 2017) (dismissing claims for infringement under the doctrine of

equivalents); *Eagle Pharm., Inc. v. Hospira, Inc.*, 424 F. Supp. 3d 355, 361 (D. Del. 2019) (granting motion to dismiss insofar as it seeks to dismiss the equivalence claims of infringement). Accepting the pleaded facts as true, the Accused Products cannot infringe under the doctrine of equivalents.  Nike's allegations regarding the Challenged Patents should be dismissed in their entirety as a result.

### C.      Amending the Complaint Would Be Futile

The claims of the Challenged Patents require the knit elements to have "knit edges free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed."  '758 Patent at claim 1.  As New Balance explained to Nike in detail during the parties' pre-suit correspondence, all of the Accused Products include shoe uppers with textile elements that have been cut from surrounding textile structure.  Between February and September of 2023, New Balance sent Nike multiple letters explaining in detail that the Accused Products do not infringe the Challenged Patents.  Despite this information, Nike never substantively engaged with New Balance regarding this issue and ignored the fundamental problem with its assertion.

Nike cannot re-write the claim language or change the fact that the textile elements identified in Nike's claim charts are in fact cut from surrounding textile structure.  No amendment to the pleadings can change the claim language or relevant facts.  Courts may deny a motion for leave to amend where—as here—"the proposed complaint would not survive a motion to dismiss." *Adams v. Wells Fargo Bank*, No. 17-12092-FDS, 2018 WL 6067508, at *3–4 (D. Mass. Nov. 20, 2018); *see also Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114 (1st Cir. 2009)).

## V.      <u>CONCLUSION</u>

Accordingly, New Balance respectfully requests the Court grant its Partial Motion to Dismiss Plaintiff's Complaint.

Dated: January 12, 2024

Respectfully submitted,

/s/ Douglas J. Kline
Douglas J. Kline (BBO# 556680)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
Tel.:  (617) 570-1209
Fax:  (617) 649-1466
dkline@goodwinlaw.com

Amadou K. Diaw (*pro hac vice*)
Jacqueline Genovese Bova (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N St. NW
Washington, DC 20036
Tel.: (202) 346-4191
Fax: (202) 204 7272
adiaw@goodwinlaw.com
jbova@goodwinlaw.com

Sarah A. Casey (*pro hac vice*)
GOODWIN PROCTER LLP
601 South Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: (213) 426-2500
Fax: (213) 623-1673
scasey@goodwinlaw.com

*Counsel for Defendant New Balance Athletics, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above document was filed on January 12, 2024 through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: *<u>/s/ Douglas J. Kline</u>*
Douglas J. Kline