UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NIKE, INC.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NEW BALANCE ATHLETICS, INC.<br><br>　　　　　　　Defendant. | Case No. 1:23-cv-12666-JEK<br><br>**ORAL ARGUMENT REQUESTED** |

**<u>NIKE'S OPPOSITION TO NEW BALANCE'S PARTIAL MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION .................................................................................................................. 1 | |
| II. | BACKGROUND .................................................................................................................... 2 | |
| III. | ARGUMENT .......................................................................................................................... 6 | |
| | A. | Nike's Complaint Far Exceeds The Pleading Standards For Patent Infringement Cases .......................................................................................................................... 6 |
| | B. | New Balance's "Insufficient Pleading" Arguments Boil Down To A Claim Construction Dispute—An Inappropriate Issue for Motions to Dismiss ................ 7 |
| | C. | The *Adidas* Court Did Not Resolve the Claim Construction Dispute Presented Here ........................................................................................................................... 9 |
| IV. | CONCLUSION ..................................................................................................................... 11 | |

# **TABLE OF AUTHORITIES**

**Cases**

*Attabotics, Inc. v. URBX, Inc.*,
  No. 1:21-cv-11051, 2022 WL 1989354, at *4 (D. Mass. June 6, 2022) .......................... 1, 2, 8, 9

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
  No. 19-cv-12533, 2020 WL 2079422, at *8 (D. Mass. Apr. 30, 2020) ...................................... 6

*K–Tech Telecomms, Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277, 1284 (Fed. Cir. 2013) ................................................................................... 1, 6

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337, 1350 (Fed. Cir. 2018) ......................................................................... 1, 7, 8, 11

*Nike, Inc. v. Adidas AG*,
  812 F.3d 1326 (Fed. Cir. 2016) ........................................................................................ 3, 9, 10

*Ocean Semiconductor LLC v. Analog Devices, Inc.*,
  No. 20-cv-12310, 2023 WL 6619360, at *2 (D. Mass. Oct. 11, 2023) ................................... 6, 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 11

*SkyHawke Techs., LLC v. Deca Int'l Corp.*,
  828 F.3d 1373, 1376 (Fed. Cir. 2016) ..................................................................................... 11

**Rules**

L.R. 16.6(e) ................................................................................................................................ 2, 9

**Regulations**

*Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings
  Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51340 (Oct. 11, 2018) ..................... 11

I.      INTRODUCTION

New Balance's Motion is a thinly veiled motion for summary judgment of non-infringement. Making matters worse, the entirety of New Balance's Motion hinges on a claim construction dispute—the exact type of dispute the "Federal Circuit has expressly cautioned against resolving . . . at the motion to dismiss stage." *Attabotics, Inc. v. URBX, Inc.*, No. 1:21-cv-11051, 2022 WL 1989354, at *4 (D. Mass. June 6, 2022); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("arguments [that] boil down to objections to [plaintiff's] proposed claim construction" are "not suitable for resolution on a motion to dismiss.").

Nike filed this lawsuit to stop New Balance's infringement of nine patents directed to Nike's ground-breaking knitted footwear technology, "Flyknit." Nike's Complaint includes more than 200 pages of detailed infringement claim charts with images of New Balance products, excerpts of New Balance's website, and annotations specifically highlighting the infringing aspects of New Balance's shoes. There is no doubt that Nike's Complaint provides New Balance with the requisite "notice of what activity . . . is being accused of infringement." *See K–Tech Telecomms, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). But rather than answering Nike's Complaint, New Balance urges the Court to contravene settled law by resolving a claim construction dispute at the motion to dismiss stage.

More specifically, New Balance asks the Court to address and resolve the scope of certain claims in three of the asserted patents that include a "flat knit edges" limitation. According to New Balance, Nike's infringement allegations for those three patents should be dismissed because they rest on an "implausible claim construction." *See* Mot. at 8–9, 14–15. The parties appear to agree that a "flat knit edge" is an edge formed during the knitting process—as opposed to an edge that is formed by cutting. But the parties dispute whether the claims are limited to textile elements that have *all* "flat knit edges" (New Balance's position) or whether the claims also cover textile

1

elements that have *some* "flat knit edges" and *some* cut edges (Nike's position). This claim construction dispute—and not a lack of detail or specificity in Nike's pleading—lies at the heart of New Balance's Motion. And contrary to New Balance's argument, the Court cannot resolve this dispute by looking at *Nike v. Adidas AG*. That case involved a different patent, different claims, and a different legal standard. And most importantly, the *Adidas* Court did not address the dispute presented here, i.e., *how many* "flat knit edges" the claims require.

Rather than resolving the parties' claim construction dispute at this premature stage, the Court should instead follow the detailed procedure set forth in the Local Patent Rules. L.R. 16.6(e). The Rules require the parties to exchange proposed terms for construction, confer about proposed constructions, brief their positions, engage with experts, and present their arguments to the Court. *Id.* All of this occurs after the parties exchange preliminary discovery and "after completion of the automatic patent-related disclosures" required under the Local Rules. L.R. 16.6(e)(1)(A). "[I]t would be improper for this Court to dismiss the complaint without the assistance" of this process. *Attabotics*, 2022 WL 1989354, at *4.

For these reasons, Nike respectfully requests that the Court deny New Balance's Motion.

**II.     BACKGROUND**

Months before filing its Complaint, Nike notified New Balance that certain New Balance products were infringing Nike's patents directed to Flyknit technology. Kelly Decl., Ex. A (Letter Nike to New Balance (Jan. 31, 2023)); ECF No. 1-1. Nike Flyknit provides a novel method of designing and manufacturing shoe uppers, which enables Nike to create footwear with excellent performance, design, and aesthetics—all while reducing materials and waste. ECF No. 1 at 1. In its initial letter, Nike suggested that the parties cooperate on the terms of an amicable resolution. Kelly Decl., Ex. A.

In response, New Balance denied infringing any of the identified patents. Kelly Decl., Ex. B (Letter New Balance to Nike (Feb. 14, 2023)). And with respect to the three patents at issue here—U.S. Patent Nos. 9,907,350, 9,918,511; and 9,924,758 ("the Challenged Patents")—New Balance argued non-infringement based on a specific interpretation of the claims. *Id.* at 2–3. New Balance pointed to the claims' recitation of certain "flat knit edges" on the textile element. *Id.* For example, Claim 1 of U.S. Patent Nos. 9,918,511, cited by New Balance, recites an "upper for an article of footwear" comprising:

> a flat knit textile element comprising *flat knit edges* free of surrounding textile structure such that the *flat knit edges* are not surrounded by textile structure from which the textile element must be removed.

*Id.*; ECF No. 1-10 ('511 patent) at 12:10–22. In view of this claim language, New Balance argued, the Challenged Patents "are limited to knit elements that have not been cut from a larger textile web." Kelly Decl., Ex. B at 3. In other words, New Balance's interpretation requires a textile element in which *all edges* are "flat knit edges." *Id.* As its only support, New Balance pointed to *Nike, Inc. v. Adidas AG*, 812 F.3d 1326 (Fed. Cir. 2016)—an earlier case involving different parties, a different patent, and a different claim construction dispute resolved under a different legal standard.

Nike responded several weeks later, noting that New Balance's non-infringement argument hinged on a "misinterpretation of the claims." Kelly Decl., Ex. C (Letter Nike to New Balance (Mar. 3, 2023)) at 3; ECF No. 1-2. Nike explained that "[n]either the plain language of the claims nor the Federal Circuit's holding" supported New Balance's proposed claim construction. *Id.* In Nike's view, the claims require that only *some edges* of the textile element are "flat knit edges." *See id.* New Balance responded four days later. Kelly Decl., Ex. D (Letter New Balance to Nike (Mar. 7, 2023)). New Balance recognized that the parties disagreed about the "scope of the

3

claims," and offered to "discuss a solution." *Id.* But those discussions ultimately proved unsuccessful.

Nike thus filed its Complaint against New Balance on November 6, 2023. ECF No. 1. Nike asserts nine patents directed to Nike's Flyknit technology. *Id.* Along with its Complaint, Nike included detailed infringement claim charts numbering more than 200 pages. ECF Nos. 1-13–1-21. For each patent, Nike's infringement charts contain: (i) images of the accused New Balance footwear products, (ii) arrows and other annotations that identify aspects of New Balance's products that correlate with the asserted claim language; (iii) excerpts of New Balance's website with relevant product descriptions; and (iv) written descriptions of Nike's infringement allegations. *Id.* A representative example of Nike's Claim Chart for U.S. Patent No. 9,907,350 is excerpted below:



After seeking a 44-day extension to respond to Nike's Complaint (ECF No. 24), New Balance moved to dismiss Nike's claims of infringement as to the Challenged Patents (ECF No. 29, "Mot."). According to New Balance, these infringement claims must be dismissed because they "rest[] on an implausible claim construction." Mot. at 14–15. New Balance's Motion raises the same claim construction dispute the parties debated in pre-suit correspondence: whether *all edges* of the textile element be "flat knit edges," or whether the claims only require that *some edges* of the textile element be "flat knit edges." *See id.* As shown below, every "failure to sufficiently plead" argument raised in New Balance's Motion rests on its disputed construction of these claims:

- "Nike alleges merely that small portions of the knit uppers meet the 'free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed' limitation, but it completely *ignores that other edges of the identified textile element in the shoe uppers are in fact removed from surrounding textile structure*." Mot. at 7 (emphasis added).

- "[T]he textile elements in the knit uppers of the shoes identified by Nike are in fact surrounded by textile structure from which the textile elements are removed, so the Accused Products cannot infringe in view of the claim language." *Id.* at 7.

- "All Claims of the Challenged Patents Require A Textile Element Where the Edges Have Not Been Removed, or Cut, From a Surrounding Textile Structure." *Id.* at 9.

- "The challenged claims therefore require that the textile element be knit to shape—*i.e.*, formed from components that are knitted directly into a specific shape—and cannot be cut to shape from a larger textile element." *Id.* at 12.

- "*Nike's complaint ignores the other edges* of the textile element which—as recited by the claims—must also be 'free of surrounding textile structure,' but in fact are not." *Id.* at 14 (emphasis added).

- "Nike's complaint completely ignores that the textile elements identified in Nike's claim charts as satisfying the relevant claim limitation *has edges that are cut from surrounding textile structure*." *Id.* at 15–16.

5

- "But Nike simply *ignores the rest of the shoe upper* that includes knit to cut edges that are surrounded by textile structure from which the textile element must be removed." *Id.* at 16 (emphasis added).

- "*Nike ignores the other edges* of the accused textile element because it knows that other edges do not satisfy the claim limitations. Edges ignored by Nike do have surrounding textile structure from which they are cut—they are knit to cut, not knit to finish as required by the asserted claims." *Id.* at 17 (emphasis added).

- "If the textile element of the uppers in the Accused Products that *have edges cut from a surrounding textile material* are found to infringe under the doctrine of equivalents, then the limitation of '[flat/knit] edges free of surrounding textile structure such that the [flat/knit] edges are not surrounded by textile structure from which the [flat/knit] textile element must be removed' is rendered void." *Id.* at 18 (emphasis added).

## III. ARGUMENT

### A. Nike's Complaint Far Exceeds The Pleading Standards For Patent Infringement Cases

New Balance cannot credibly argue that Nike's Complaint lacks the requisite level of detail or specificity. To meet the *Twombly* and *Iqbal* pleading standards in a patent case, a patentee "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *K-Tech Telecomms*, 714 F.3d at 1284. And even though "a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent[s]," *id.*, Nike has done so here—to the tune of 200 pages of detailed infringement contentions. ECF Nos. 1-13–1-21. This Court has previously found basic infringement claim charts "more than enough" to "put [the alleged infringer] on notice, in compliance with the *Twombly* pleading standard." *Bio-Rad Labs, Inc. v. 10X Genomics, Inc.*, No. 19-cv-12533, 2020 WL 2079422, at *8 (D. Mass. Apr. 30, 2020). And this court recently reiterated the sufficiency of claim charts in *Ocean Semiconductor LLC v. Analog Devices, Inc.*:

> Drawing all reasonable inferences in Ocean's favor, the Court concludes that Ocean has adequately identified the system accused of infringing the relevant claims, and produced a claim chart that supports the plausibility of infringement. No more is necessary at this stage of the litigation.

No. 20-cv-12310, 2023 WL 6619360, at *2 (D. Mass. Oct. 11, 2023). This Court should reach the same conclusion here.

### B. New Balance's "Insufficient Pleading" Arguments Boil Down To A Claim Construction Dispute—An Inappropriate Issue for Motions to Dismiss

As discussed above, all of New Balance's "failure to sufficiently plead" arguments rely on New Balance's proposed construction of the claims: that *all* edges of the knitted textile element be "flat knit edges." Mot. at 14 ("Nike's complaint ignores *the other edges* of the textile element which—as recited by the claims—must also be 'free of surrounding textile structure,' but in fact are not.") (emphasis added). *See also id.* at 7, 9, 12, 15–18. In other words, New Balance argues that Nike's infringement claims must be dismissed because they "rest[] on an implausible claim construction." *Id.* at 14–15.

New Balance's Motion is similar to the defendant's motion in *Nalco Co. v. Chem-Mod, LLC*. There, the Federal Circuit reversed the district court for improperly dismissing a patent infringement complaint. *Nalco*, 883 F.3d at 1342, 1349. The Court began by observing that the defendant's motion to dismiss was based on the defendant's proposed claim construction—not a lack of detail or specificity in the infringement allegations:

> Defendants do not seem to challenge that [the plaintiff] met the notice requirement of FRCP Rule 8 or the pleading standard required under *Twombly* and *Iqbal*. Instead, Defendants assert that [plaintiff's] infringement claims simply are not plausible because "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." . . . Defendants' objections to this theory of infringement read like classic *Markman* arguments. Defendants first take issue with [plaintiff's] allegation that "coal combustion flue gas" is "the gas that is created during the combustion of coal." *Id.* at 15. But **Defendants' arguments boil**

7

>   ***down to*** objections to [plaintiff's] proposed claim construction for "flue gas," a dispute ***not suitable for resolution on a motion to dismiss***.

*Nalco*, 883 F.3d at 1347–49 (emphasis added). The Federal Circuit further held that it would be "particularly inappropriate" to evaluate claim construction in view of an alleged admission the patentee made in an earlier case before the Patent Trial and Appeal Board. *Id.* Addressing all of these arguments, the Court held:

> It is ***not appropriate to resolve these disputes***, or to determine whether the method claimed in the '692 patent should be confined to the preferred embodiment, on a Rule 12(b)(6) motion, without the benefit of claim construction. The "purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*." The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations.

*Id.* at 1350.

This Court has echoed the holdings of *Nalco*. In *Attabotics, Inc. v. URBX, Inc.*, for example, this Court denied a motion to dismiss that similarly boiled down to claim construction. No. 1:21-cv-11051, 2022 WL 1989354, at *4 (D. Mass. June 6, 2022) (citing *Nalco*, 883 F.3d at 1349). In view of the parties' "competing interpretations" of certain claim terms, the Court explained that "dismissal now, without the benefit of proceeding to claim construction," would be "improper":

> Although framed as an argument based on the sufficiency of the complaint, [defendant's] argument is predicated on the theory that its proposed reading of the claim limitations is the correct one. [Defendant's] objections read like classic *Markman* arguments. While [defendant's] argument may very well carry the day as the proceeding unfolds, it would be improper for this Court to dismiss the complaint without the assistance of claim construction.

*Id.* (cleaned up).

Here too, resolution of New Balance's non-infringement claims would require the Court to prematurely resolve the parties' claim construction dispute. Rather than contravening Federal Circuit law that prohibits claim construction at this stage, the Court should follow the detailed procedures set forth in the Local Patent Rules. L.R. 16.6(e). After the parties exchange preliminary discovery and complete their "automatic patent-related disclosures," the Rules require parties to engage in a months-long claim construction process that includes (i) exchanging proposed terms for construction; (ii) conferring about proposed constructions; (iii) briefing their positions; (iv) engaging with and deposing experts; (v) and presenting their arguments to the Court. *Id.* "[I]t would be improper for this Court to dismiss the complaint without the assistance of claim construction." *Attabotics*, 2022 WL 1989354, at *4. It is not appropriate for the Court to resolve the parties' claim construction dispute at this early stage and without the benefit of the detailed claim-construction process.

### C. The *Adidas* Court Did Not Resolve the Claim Construction Dispute Presented Here

New Balance suggests that the Court need not resolve the parties' claim construction dispute because the "meaning of this key claim limitation was confirmed by the Federal Circuit and should be applied here." Mot. at 1. *See also* Mot. at 12, 13, 15 (citing *Nike, Inc. v. Adidas AG*, 812 F.3d 1326 (Fed. Cir. 2016)). New Balance even contends that Nike "should be estopped from seeking a different construction of the claim language at issue because the scope of this claim language was already litigated in the *Adidas* case." Mot. at 14. *See also id.* at 13 ("Nike cannot attempt to depart from the Federal Circuit's prior understanding of the claim language at issue.").

But these arguments are undermined by a single, critical fact: the Court in *Adidas* never addressed the dispute presented here. *See Adidas*, 812 F.3d at 1346–47. In *Adidas*, the Federal Circuit merely considered the proper definition of "flat knit edge." *Id.* The Federal Circuit never

9

opined on the dispute presented here: whether the claims required *all* edges—or only *some* edges—of the knit textile element to be "flat knit edges." *See id.*

Before the Board, Adidas argued that the definition of "flat knit edge" includes an edge formed by cutting. *Id.* at 1346. ("Adidas argued that the broadest reasonable interpretation of 'flat knit edges' should encompass not only flat-knit edges that are created when a flat knit textile element is knit to shape, but also edges created from cutting a textile element from a larger textile."). The Board disagreed with that construction, explaining that the definition of "flat knit edge" does *not* include an edge formed by cutting. *Id.* at 1346. ("The Board disagreed and determined that the broadest reasonable construction of 'flat knit edges' is 'an edge of a flat knit textile element, which is itself flat knit, e.g., which is not formed by cutting from a flat knit textile element.'").

On appeal, Adidas advanced the same argument: "that the Board erred because 'flat knit edge' does not preclude edges formed by cutting." *Id.* The Federal Circuit likewise disagreed, "affirm[ing] the Board's conclusion that the broadest reasonable interpretation of 'flat knit edge' is 'an edge of a flat knit textile element, which is itself flat knit, e.g., which is not formed by cutting from a flat knit textile element.'" *Id.* at 1346–47. The Federal Circuit never held, as New Balance suggests, that *none* of the edges of the textile element can be removed, or cut, from a surrounding textile structure. *See id.* The Court only held that "the scope of this claim is limited to a flat-knit, textile element where ***the flat knit edges*** have not been removed, or cut, from a surrounding textile structure." *Id.* at 1346. The Court then explained that an "interpretation that included a flat-knit, textile element that has been cut from a larger textile web"—i.e., a textile element with *only* cut edges—"would contradict the express claim language." *Id.*

10

As another point of distinction, the *Adidas* Court analyzed the meaning of "flat knit edges" using a claim construction standard that is different from the controlling standard here. In *Adidas*, the Federal Circuit evaluated the meaning of "flat knit edges" using the claim construction standard applied by Patent Trial and Appeal Board until 2018: the "broadest reasonable interpretation" standard. *Id. See Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, 83 Fed. Reg. 51340 (Oct. 11, 2018). This Court must apply a different claim construction standard: the *Phillips* standard. *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). The difference in standards presents yet another reason why the Court cannot rely on the *Adidas* decision to resolve the parties' claim construction dispute here:

> Because the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), the issue of claim construction under *Phillips* to be determined by the district court has not been actually litigated.

*SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016).

Because the *Adidas* Court never addressed the issue presented here, the Federal Circuit's decision does not assist this Court in resolving the parties' claim construction dispute.

### IV.  CONCLUSION

For the foregoing reasons, the arguments in New Balance's Motion are predicated on an unresolved claim construction dispute. Those arguments are "not suitable for resolution on a motion to dismiss." *See Nalco*, 883 F.3d at 1350. Nike thus requests that this Court deny New Balance's Partial Motion to Dismiss and set an Initial Scheduling Conference.

11

Dated:  January 25, 2024

By: /s/ *Fred A. Kelly, Jr.*

Fred A. Kelly, Jr. (Bar No. 544046)
fred.kelly@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
200 Clarendon St., 53rd Floor
Boston, Massachusetts 02116
Telephone: (617) 351-8050

Christopher J. Renk (*pro hac vice*)
Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice*)
Michael.Harris@arnoldporter.com
Aaron Bowling (*pro hac vice*)
Aaron.Bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300

Lindsey C. Staubach (*pro hac vice*)
lindsey.staubach@arnoldporter.com
Kathleen P. Duffy (*pro hac vice*)
kathleen.duffy@arnoldporter.com
Miranda Hallett (*pro hac vice*)
miranda.hallett@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745

*Attorneys for Plaintiff Nike, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the above date.

*/s/ Fred A. Kelly, Jr.*
Fred A. Kelly, Jr.