UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NIKE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:23-cv-12666-JEK |
| NEW BALANCE ATHLETICS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM AND ORDER ON
### DEFENDANT'S PARTIAL MOTION TO DISMISS

**KOBICK, J.**

This is a patent infringement case involving methods for manufacturing the upper part of sneakers and other shoes. Plaintiff Nike, Inc. alleges that defendant New Balance Athletics, Inc. has infringed, and continues to infringe, nine of its patents related to those manufacturing methods. New Balance has moved to dismiss Nike's claims with respect to three of the patents. In New Balance's view, those patents cover shoe uppers with edges that are all knit into their final form, rather than cut from a larger knitted textile, but do not cover shoe uppers with only some of their edges knit into their final form. New Balance contends that the complaint fails to allege that its shoe uppers infringe those patents, so construed. Nike disagrees with New Balance's view of the scope of its patented technology and contends, in any event, that it is premature to resolve the parties' interpretive dispute on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The Court will not, and need not, resolve the disagreement over the scope of the technology claimed in Nike's patents at this stage in the proceedings. Even assuming, for the sake of the

motion, that Nike's patents are limited as New Balance contends, the complaint plausibly alleges infringement. Accordingly, New Balance's partial motion to dismiss will be denied.

## BACKGROUND

The pertinent facts, as alleged in the complaint, are as follows. Nike is in the business of designing, developing, marketing, and selling athletic footwear, apparel, and equipment. ECF 1, ¶ 10. The company's research and design efforts have led to technologies and products related to athletic performance. *Id.* One example is Nike's "Flyknit" technology—a method of designing and manufacturing the top part of a shoe, called the "upper," which sits atop and is attached to the sole of the shoe. *Id.* ¶ 1; ECF 1-1, at 1. This upper component of a shoe "has the general shape of a foot and forms a void for receiving the foot that is accessed using the ankle opening." *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1329 (Fed. Cir. 2016).

Nike has filed and obtained patents directed to its Flyknit technology. ECF 1, ¶¶ 2, 11. It alleges that New Balance—a company that likewise designs, manufactures, and sells footwear—has infringed, and continues to infringe, nine of those patents through its making and selling of shoes. *Id.* ¶¶ 16, 20.[1] Only three of these patents—U.S. Patent No. 9,907,350 (the "'350 patent"), U.S. Patent No. 9,918,511 (the "'511 patent"), and U.S. Patent No. 9,924,758 (the "'758 patent")—are at issue in this motion to dismiss. These three patents concern the process for manufacturing shoe uppers.

Traditionally, shoe uppers have been made by cutting the shape of the upper from a large sheet of knitted textile. *See Nike*, 812 F.3d at 1336-37. This method of manufacturing is called

---

[1] The patents that Nike alleges New Balance has infringed are U.S. Patent No. 8,266,749; U.S. Patent No. 8,898,932; U.S. Patent No. 9,060,562; U.S. Patent No. 9,510,636; U.S. Patent No. 9,730,484; U.S. Patent No. 9,907,350; U.S. Patent No. 9,918,511; U.S. Patent No. 9,924,758; and U.S. Patent No. 11,707,105. ECF 1, ¶ 11.

"knit to cut." *See id.*; ECF 29, at 5 n.1; ECF 31, at 9. Shoe uppers can also be made by knitting a textile itself into the shape of the upper. *See* ECF 1-9, at 22. Under this approach, the upper is not cut from a larger piece of knitted textile, but rather comes out of the knitting machine in its final form. *See id*. This method of manufacturing is called "knit to shape." *See* ECF 1-18, at 10. The edges of shoe uppers that are knit into their final form, rather than made by cutting, are called "flat knit edges." *See* ECF 1-9, at 26. One advantage of the knit to shape method is that it reduces materials and waste; the knit to cut method, in contrast, leaves some textile unused. *See* ECF 1, ¶ 1.

The '350, '511 patent, and '758 patents each claim uppers that use knit to shape technology. Claim 1 of the '350 patent, for example, claims:

> An upper for an article of footwear, the upper comprising: a flat knit textile element having (1) *flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the flat knit textile element must be removed*, and (2) a plurality of apertures formed by omitting stitches in a first portion of the flat knit textile element defining a forefoot region of the upper; a non-textile element secured to a second portion of the flat knit textile element defining the heel region of the upper; and one or more strips of non-textile material secured to a third portion of the flat knit textile element on a lateral side of the upper.

ECF 1-9, at 26 (emphasis added). Claim 1 of the '511 and '758 patents have virtually identical language. *See* ECF 1-10, at 26 ('511 patent); ECF 1-11, at 26 ('758 patent).

Nike alleges that several of New Balance's shoes infringe these patents. ECF 1, ¶¶ 66, 74, 82.[2] Echoing the language of the claims in the '350, '511, and '758 patents, Nike further alleges

---

[2] The specific footwear products that allegedly infringe Nike's '350, '511, and '758 patents are New Balance's Fresh Foam More Trail v3, Fresh Foam X 1080 Unlaced, Fresh Foam X 1080 v12, Fresh Foam X Vongo v5, Fresh Foam X 1080 UNLACED, Fresh Foam X Evoz v3 Slip Resistant, FuelCell SuperComp Elite v3, FuelCell SuperComp Trainer, FuelCell MD-X, Tekela v4 Magia FG, Tekela v4 Pro FG, Tekela v4 Pro Low FG, Furon V7 Pro FG, and Furon V6+ Pro FG. ECF 1, ¶¶ 66, 74, 82.

that these New Balance shoes contain "an upper for an article of footwear, the upper comprising a flat knit textile element having (1) flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the flat knit textile element must be removed, and (2) a plurality of apertures formed by omitting stitches in a first portion of the flat knit textile element defining a forefoot region of the upper, a non-textile element secured to a second portion of the flat knit textile element defining the heel region of the upper, and one or more strips of non-textile material secured to a third portion of the flat knit textile element on a lateral side of the upper." ECF 1, ¶ 66; *see also id.* ¶¶ 74 (similar), 82 (similar). Attached to Nike's complaint are claim charts with pictures of some of New Balance's allegedly infringing shoes, with text boxes and arrows labeling some—but not all—of the edges of the upper components of the shoes as "[f]lat knit, knit to shape edges." *See* ECF 1-18, at 9-13; ECF 1-19, at 14-18; ECF 1-20, at 9-13.

Nike sent New Balance letters claiming infringement on January 31, March 3, and September 1, 2023. ECF 1, ¶¶ 13-15; ECF 1-1; ECF 1-2; ECF 1-3. On November 6, 2023, Nike initiated this action, alleging infringement of nine of its patents, literally or under the doctrine of equivalents. ECF 1, ¶¶ 21-94. New Balance filed a partial motion to dismiss with respect to the claims related to the '350, '511, and '758 patents (Counts VI, VII, and VIII) in January 2024.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief."

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009).

In patent infringement cases, a plaintiff "need not 'prove its case at the pleading stage'" or "plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1350 (Fed. Cir. 2021) (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)) (citations and quotation marks omitted); *see Ocean Semiconductor LLC v. Analog Devices, Inc.*, No. 20-cv-12310-PBS, 2023 WL 6619360, at *2 (D. Mass. Oct. 11, 2023). Rather, "it is enough 'that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'" *Bot M8 LLC*, 4 F.4th at 1352 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (citations and quotation marks omitted). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353. Where "the factual allegations are actually *inconsistent* with and contradict infringement, they are . . . insufficient to state a plausible claim." *Id.* at 1354 (emphasis in original); *see Attabiotics, Inc. v. URBX, Inc.*, No. 21-cv-11051-ADB, 2022 WL 1989354, at *2 (D. Mass. June 6, 2022).

**DISCUSSION**

New Balance moves to dismiss Nike's claims related to the '350, '511, and '758 patents because, in its view, the allegations of infringement in Nike's complaint are inconsistent with the language of the claimed technology in those patents. "To establish literal infringement, 'every limitation set forth in a claim must be found in an accused product, exactly." *Becton Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). Therefore, "'[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.'" *Id.* (quoting *Amgen Inc. v. F. Hoffman-LA Roche, Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009)).

New Balance relies heavily on *Nike, Inc. v. Adidas AG*, a Federal Circuit decision that construed key language in Claim 1 of the '350, '511, and '758 patents, in the context of a related patent, U.S. Patent No. 7,347,011. *See Nike*, 812 F.3d at 1346. Specifically, the Federal Circuit considered the language "flat knit textile element . . . having flat knit edges free of surrounding textile structure." *Id.* During the *inter partes* review below, Adidas had argued to the Patent Trial and Appeal Board that the term "flat knit edges" encompassed edges created when a textile element was knit to shape *and* edges created when a textile element was knit to cut. *Id.* The Board disagreed, explaining that, in the context of this claim, a "'flat knit edge' is 'an edge of flat knit textile element . . . which is *not* formed by cutting from a flat knit textile element." *Id.* (emphasis added) (quoting the Board's decision). The Federal Circuit agreed with the Board's construction of the language. *Id.* The "scope of th[e] claim," it held, "is limited to a flat-knit, textile element where the flat knit edges have not been removed, or cut, from a surrounding textile structure." *Id.* And it further explained that "[a]n interpretation that included a flat-knit, textile element that has been cut from a larger textile web would contradict the express claim language." *Id.*

6

New Balance contends that Nike's allegations about its allegedly infringing shoes contradict the claim language, as construed in the *Nike* decision. In its view, the Federal Circuit held in *Nike* that a product could not infringe the patents unless *all* of the edges of a shoe upper were knit to shape. Put otherwise, in New Balance's view, if *any* edge of a shoe upper were knit to cut—*i.e.*, cut from a larger textile—there can be no infringement as a matter of law. Accordingly, New Balance argues that to plead infringement of the '350, '511, and '758 patents, Nike was required, but failed, to allege that *all* of the edges of the New Balance's allegedly infringing shoes are knit to shape. Nike disagrees. It understands the Federal Circuit to have held that the claim language encompasses shoe uppers where at least *some* of the edges are knit to shape. In Nike's view, if an upper has some edges that were knit to shape, and others that were knit to cut, it falls within the scope of the claimed technology. And in any event, Nike contends, this kind of parsing of claim language is appropriate at the claim construction phase of the case, not on a motion to dismiss.

The Court need not resolve the parties' dispute over the Federal Circuit's construction of the claim language at this stage in the proceedings. Even if New Balance is correct that the claim language in the '350, '511, and '758 patents is limited, as a matter of law, to uppers with knit edges that are all knit to shape, it fails to identify any allegation in the complaint that its allegedly infringing uppers have some edges that are knit to cut. For that key factual proposition—*i.e.*, that New Balance's allegedly infringing uppers have some edges that are *not* knit to shape—New Balance relies on a letter that it mailed to Nike. That letter was attached as an exhibit to New Balance's motion to dismiss. *See* ECF 30-1, at 3-4 ("We have not identified any New Balance shoes that include knit uppers that are manufactured without cutting the uppers from a larger web of textile."). But on a motion to dismiss for failure to state a claim, "a court ordinarily may only

7

consider facts alleged in the complaint and exhibits attached thereto, or else convert the motion into one for summary judgment." *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013) (citation omitted). The key factual claim in the letter from New Balance—that some of the edges on the allegedly infringing uppers are knit to cut—may not properly be considered in ruling on New Balance's motion to dismiss, because it comes from a document not attached to or fairly incorporated into the complaint. *See Douglas v. Hirshon*, 63 F.4th 49, 57 (1st Cir. 2023).

Aside from the letter, New Balance also points to claim charts attached as exhibits to the complaint, which may properly be considered on a motion to dismiss. *See Freeman*, 714 F.3d at 35-36. New Balance contends that, in those claim charts, which depict New Balance's allegedly infringing shoes, Nike "cherry picks a small portion of the upper and identifies it as having 'knit to shape' edges" while "ignor[ing] the other edges of the textile element." ECF 29, at 18. The illustrations in the claim charts label some edges of New Balance's allegedly infringing shoes as "knit to shape," but do not label every single edge depicted in the photograph. *See* ECF 1-18, at 10-14 ('350 Patent Claim Chart); ECF 1-19, at 14-19 ('511 Patent Claim Chart); ECF 1-20, at 9-13 ('758 Patent Claim Chart). New Balance insists that, to plausibly allege infringement of the claims in the patents, as construed by the Federal Circuit, Nike's claim charts should have labeled every single edge of the uppers in the photographs as knit to shape.

New Balance's argument overstates a plaintiff's pleading burden in a patent infringement case. The complaint alleges that New Balance's shoes contain "an upper for an article of footwear, the upper comprising a flat knit textile element having (1) flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the flat knit textile element must be removed." ECF 1, ¶ 66 ('350 patent); *see also id.* ¶¶ 74 (similar for the '511 patent), 82 (similar for the '758 patent). While this allegation does not explicitly state that

*all* of the flat knit edges are free of surrounding textile structure, neither does it state that only *some* of the flat knit edges are free of surrounding textile structure. And nothing else in the complaint supports New Balance's factual assertion that its shoes have some edges that are knit to cut. Construing the well-pleaded facts in the light most favorable to Nike, as this Court must on a motion to dismiss, the complaint plausibly alleges that all of the flat knit edges of New Balance's uppers are knit to shape. That is enough to place New Balance "'on notice of what activity . . . is being accused of infringement.'" *Bot M8 LLC*, 4 F.4th at 1352 (citation omitted). At the pleading stage, Nike is not required to "'prove its case,'" or "plead infringement on an element-by-element basis." *Id.* at 1350 (citations and quotation marks omitted).

Thus, even if, as New Balance contends, the claim language of the '350, '511, and '758 patents is limited to footwear uppers with edges that are all knit to shape, Nike's factual allegations are consistent with New Balance's proffered limitation. New Balance fails to demonstrate that the infringement allegations in the complaint contradict or are inconsistent with its own interpretation of the claim language. *See id.* at 1353. Accordingly, the factual allegations in the complaint are sufficient to state plausible claims for literal infringement of the '350, '511, and '758 patents. And because that is so, the Court need not address whether Nike has sufficiently alleged infringement under a doctrine of equivalents theory.

## CONCLUSION

For the foregoing reasons, New Balance's partial motion to dismiss, ECF 28, is DENIED. SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2024