# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

NIKE, INC.,

        *Plaintiff, Counter-claim Defendant,*

    v.

NEW BALANCE ATHLETICS, INC.,

        *Defendant, Counter-claim Plaintiff.*

Civil Action No. 1:23-cv-12666-JEK

**DEFENDANT NEW BALANCE ATHLETICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR STAY PENDING *INTER PARTES* REVIEW**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND..................................................................................... 2

    A.  This Litigation.................................................................................................... 2

    B.  The Pending IPRs ............................................................................................. 4

III.  LEGAL STANDARDS ............................................................................................. 5

IV.   ARGUMENT............................................................................................................. 6

    A.  The Vast Majority of this Litigation Lies Ahead............................................. 6

        1.  A claim construction order is months away and summary judgment and *Daubert* orders are over a year away. ............................................................. 7

        2.  Discovery is in its earliest stages. ................................................................. 8

        3.  There is no trial date. .................................................................................... 9

    B.  A Stay Will Simplify the Issues and Promote Judicial Economy................... 10

        1.  The pending IPRs are likely to significantly pare down the products at issue. .......... 10

        2.  A stay makes particular sense in this case. .................................................. 14

    C.  Nike Will Not Suffer Undue Prejudice or a Tactical Disadvantage from a Stay ............. 15

        1.  Nike cannot show prejudice based on its status as a New Balance competitor.......... 15

        2.  Nike's actions belie any claim of undue prejudice or tactical disadvantage. ............. 17

V.    CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS, LLC v. EMC Corp.*,
109 F. Supp. 3d 352 (D. Mass., June 10, 2015).............................................................. *passim*

*Air Vent, Inc. v. Owens Corning Corp.*,
12-cv-1699, 2012 WL 1607145 (W.D. Pa. May 8, 2012) .......................................................15

*Amsted Rail Co., Inc. v. Hum Indus. Tech., Inc.*,
22-cv-445-AGF, 2023 WL 2864553 (E.D. Mo. Apr. 10, 2023).............................................17

*In re Body Science LLC Patent Litig.*,
12-cv-10536-FDS, 2012 WL 5449667 (D. Mass. Nov. 2, 2012) .................................. *passim*

*Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*,
12-cv-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014) .................................................11

*British Telecomms. PLC v. IAC/InterActive Corp.*,
18-cv-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020)...........................................6, 9

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
13-cv-02013-JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014)............................................16

*Destination Maternity Corp. v. Target Corp.*,
12 F. Supp. 3d 762 (E.D. Pa., Mar. 24, 2014) .......................................................................17

*Dietz v. Bouldin*,
579 U.S. 40 (2016).....................................................................................................................5

*DiversiTech Corp. v. RectorSeal, LLC*,
20-11896-NMG, 2021 WL 2953324 (D. Mass. July 14, 2021)........................................7, 14

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988).................................................................................................5

*Evolutionary Intel., LLC v. Apple, Inc.*,
13-cv-4201-WHA, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014).................................................8

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal., Oct. 9, 2015) ....................................................................16

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)........................................................................................4, 14

*Gratuity Sols, LLC v. Toast, Inc.*,
   22-cv-11539-JEK, 2024 WL 1770816 (D. Mass. Apr. 24, 2024) ....................................4, 7, 8

*In re Intel Corp.*,
   21-168, 2021 WL 4427875 (Fed. Cir. Sept. 27, 2021) ........................................................4

*Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*,
   15-cv-30005-MGM, 2016 WL 1735330 (D. Mass. Apr. 28, 2016) ......................9, 13, 16, 18

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).............................................................................................................5

*MicroPairing Techs. LLC v. Am. Honda Motor Co.*,
   21-cv-4034-JVS/KESx, 2022 WL 17219084 (C.D. Cal. June 24, 2022) ..........................8, 10

*Mizuho Orthopedic Sys., Inc. v. Allen Med. Sys., Inc.*,
   610 F. Supp. 3d 362 (D. Mass., July 6 2022) .......................................................................16

*ModernaTX, Inc. v. Pfizer Inc.*,
   22-cv-11378-RGS (D. Mass. Apr. 12, 2024).....................................................................7, 11

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
   12-cv-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2015)...............................................16

*NFC Tech. LLC v. HTC Am., Inc.*,
   2:13-CV-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015)...............................13, 19

*Nike, Inc. v. lululemon U.S. Inc.*,
   23-cv-771 (S.D.N.Y.)...........................................................................................................2

*Nike, Inc. v. Skechers U.S.A., Inc.*,
   23-cv-9346 (C.D. Cal.) ......................................................................................................2, 3

*Novoluto GMBH v. Uccellini LLC*,
   20-cv-02284-MK, 2021 WL 2251911 (D. Or. May 19, 2021)...............................................13

*NST Glob., LLC v. SIG Sauer Inc.*,
   19-cv-792-PB, 2020 WL 1429643 (D.N.H. March 24, 2020)................................................14

*Ocean Semiconductor LLC v. Analog Devices, Inc.*,
   20-cv-12310 (D. Mass. Sept. 20, 2021) ...............................................................................14

*Oticon A/S v. GN Resound A/S*,
    15-cv-2066-PJS/HB, 2015 WL 5752429 (D. Minn. Aug. 5, 2015)........................................17

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985)........................................................................................6

*PersonalWeb Techs., LLC v. Apple Inc.*,
    69 F. Supp. 3d 1022 (N.D. Cal. 2014) ...........................................................................6

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
    549 F.3d 842 (Fed. Cir. 2008).......................................................................................5

*Provisur Techs., Inc. v. Weber, Inc.*,
    19-cv-6021-SRB, 2019 WL 4131088 (W.D. Mo. Aug. 29, 2019) ...................................15

*Realtime Data LLC v. Teradata Ops., Inc.*,
    No. SACV 16-02743-AG, 2017 WL 3453295 (C.D. Cal. Feb. 27, 2017)...........................10

*Rembrandt Wireless Techs., LP v. Qualcomm Inc.*,
    19-cv-00705-JLS-JDE, 2020 WL 5044195 (C.D. Cal. Apr. 9, 2020) .................................8

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
    13-cv-24002, 2014 WL 12600144 (D. Minn. Oct. 10, 2014)..........................................18

*Serv. Sols. U.S., L.L.C. v. Autel.US Inc.*,
    13-cv-10534, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015) ...........................................11

*SherryWear, LLC v. Nike, Inc.*,
    23-cv-11599 (D. Mass., Sept. 3, 2024) .........................................................................14

*Smartflash LLC v. Apple Inc.*,
    621 F. Appx. 995 (Fed. Cir. 2015).................................................................................7

*SurfCast, Inc. v. Microsoft Corp.*,
    12-cv-333-JDL, 2014 WL 6388489 (D. Me. Nov. 14, 2014)..........................................15

*TAS Energy, Inc. v. San Diego Gas & Elec. Co.*,
    12-cv-2777-GPC/BGS, 2014 WL 794215 (S.D. Cal. Feb. 26, 2014).................................9

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
    18-cv-12029-ADB, 2019 WL 1767394 (D. Mass. Apr. 22, 2019)..........................5, 16, 17

*Tierravision, Inc. v. Google, Inc.*,
    No. 11cv2170 DMS(BGS), 2012 WL 559993 (S.D. Cal. Feb. 21, 2012) ...........................10

iv

*Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Americas., Inc.*,
   15-cv-144, 2015 WL 6394436 (S.D. Tex. Oct. 22, 2015) ......................................................14

*Tse v. Apple Inc.*,
   06-cv-6573-SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) ...............................................6

*Ultratec, Inc. v. CaptionCall, LLC*,
   611 F. App'x 720 (Fed. Cir. 2015) .........................................................................................6

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Supp. 2d 1028 (C.D. Cal., May 2, 2013) ....................................................................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)............................................................................................18

*Vivint, Inc. v. SkyBell Techs., Inc.*,
   21-cv-9472-GW/GJSx, 2022 WL 18587113 (C.D. Cal. Nov. 9, 2022) .................................10

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
   14-1153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015)..................................................8

*WSOU Invs. LLC v. Juniper Networks Inc.*,
   21-cv-7557-BLF, 2022 WL 19709 (N.D. Cal. Jan. 3, 2022)..................................................14

*ZeaVision, LLC v. Bausch & Lomb Inc.*,
   21-cv-739-RWS, 2022 WL 715013 (E.D. Mo. Mar. 10, 2022)..............................................17

*Zillow, Inc. v. Trulia, Inc.*,
   12-cv-1549-JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013)..........................................17

**Statutes**

35 U.S.C. §§ 311-319 .................................................................................................................4

35 U.S.C. § 314(a) ...............................................................................................................4, 12

35 U.S.C. § 316(a)(11)..........................................................................................................4, 15

**Other Authorities**

USPTO, PTAB TRIAL STATISTICS: FY24 END OF YEAR OUTCOME ROUNDUP 6,
   *available at* http://bit.ly/41e9ZXi (last accessed March 12, 2025)...................................12, 13

## I.  <u>INTRODUCTION</u>

Defendant New Balance Athletics, Inc. ("New Balance") respectfully requests that the Court stay this action through, at a minimum, August 9, 2025, at which point the parties will have (1) final written decisions in *Inter Partes* Review ("IPR") Nos. IPR2023-01460 and IPR2024-00460; and (2) institution decisions in IPR Nos. IPR2025-00020, IPR2025-00142, IPR2025-00141, IPR2025-00144, IPR2025-00150, and IPR2025-00151. These IPRs collectively challenge six of the nine patents asserted in this litigation, and the decisions on the petitions are likely to significantly simplify this case.

All factors weigh in favor of a stay. First, this case is in its early stages. Minimal discovery has taken place, this Court has neither held a *Markman* hearing nor issued a claim construction order, expert discovery is months away, summary judgment and *Daubert* briefing is not scheduled to take place for over a year, and there is no scheduled trial date. Because there is far more work ahead of the parties and the Court than behind them, a stay will conserve judicial resources and avoid unnecessary expenditures of time and effort.

Second, the pending IPRs are highly likely to simplify this action. Plaintiff Nike, Inc. ("Nike") filed a complaint challenging over sixty pairs of shoes, but that number may be reduced to as few as twelve shoes depending on the ultimate outcomes of the IPRs. Even a mixed result in the IPRs could reduce the number of accused shoes by one-half or two-thirds, significantly streamlining the case.

Finally, a stay will not result in any undue prejudice to the patentee. Nike has never moved for a preliminary injunction or otherwise suggested that it will be harmed by a brief delay. Nor could it: Nike's claims are compensable through monetary damages, eliminating any harm from a stay.

In short, the most efficient path is to stay the case through at least August 9, 2025, at which time the parties will have significantly more information about the status of the IPRs on the Asserted Patents. New Balance proposes that the parties submit a status report at that time to update the court on the outcome of the various IPRs, either proposing to move ahead with litigation or continue the stay, depending on the status of the IPRs.

## II.    FACTUAL BACKGROUND

### A.    This Litigation

Nike filed suit against New Balance on November 6, 2023, alleging that New Balance infringes nine patents directed to articles of footwear and their methods of manufacture: U.S. Patent Nos. 8,266,749 (the "'749 Patent"), 8,898,932 (the "'932 Patent"), 9,060,562 (the "'562 Patent"), 9,510,636 (the "'636 Patent"), 9,730,484 (the "'484 Patent"), 9,907,350 (the "'350 Patent"), 9,918,511 (the "'511 Patent"), 9,924,758 (the "'758 Patent"), and 11,707,105 (the "'105 Patent") (collectively, the "Asserted Patents"). D.I. 1 ¶ 11. The Asserted Patents involve knit textile elements used in shoe uppers. For example, claim 1 of the '749 Patent recites:

A method of manufacturing an article of footwear, the method comprising:

> simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure;
>
> removing the knitted textile element from the surrounding knitted textile structure;
>
> incorporating the knitted textile element into the article of footwear.

'749 Patent, cl. 1. Nike has asserted many of these same patents against other footwear companies, including Skechers and lululemon. *See Nike, Inc. v. lululemon U.S. Inc.*, 23-cv-771 (S.D.N.Y.) (asserting, among others, the '749 and '484 Patents); *Nike, Inc. v. Skechers U.S.A., Inc.*, 23-cv-

9346 (C.D. Cal.) (asserting, among others, the '749, '562, '636, '484, and '511 Patents); *see also* D.I. 1 ¶ 3 (listing additional actions).

New Balance filed a partial motion to dismiss on the basis that the accused shoes could not infringe the '350, '511, and '758 Patents because the textile elements in the shoes are cut from larger webs of surrounding textile structure ("knit to cut"), while the patents are directed to textile elements that are knitted into their final shape ("knit to shape"). D.I. 29. This Court denied the motion to dismiss on August 13, 2024, declining to engage in claim construction or resolve on the pleadings whether New Balance's shoes infringe. D.I. 51.

This case is otherwise still in its earliest stages. Discovery has barely begun. At the earliest, fact discovery will close nine months from now, on December 19, 2025. D.I. 65 at 2.[1] Expert discovery is even further away: opening expert reports are due in January 2026 and expert discovery does not close until March 19, 2026, over a year from now. *Id.* at 4. In line with this schedule, the parties have not noticed, let alone taken, any fact or expert depositions. Diaw Decl. ¶ 8. Document production is just beginning: New Balance has produced approximately 11,273 documents, while Nike has produced approximately 53,792 documents, the vast majority of which Nike had already produced in prior litigations. Diaw Decl. ¶¶ 9–10. There has likewise been only minimal written discovery—each party has issued just one set of interrogatories. Diaw Decl. ¶ 11.

The next substantive ruling in the case is also months away. Claim construction is still ongoing, and the *Markman* hearing is not scheduled until June 20, 2025. D.I. 65 at 3. Briefing on summary judgment and *Daubert* motions will not begin until April 2026, *id.* at 4, meaning a

---

[1] Per the Scheduling Order, fact discovery will close on "December 19, 2025 or 60 days after the Court's *Markman* Order, whichever is later." D.I. 65 at 2.

hearing and decision on those motions is unlikely before the summer or fall of 2026. And, critically, there is no trial date in the case. *Id.* at 11.

**B.    The Pending IPRs**

An IPR is an "expedited procedure for challenging the validity of a patent before the PTO and its Patent Trial and Appeal Board" ("Board"). *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 355 (D. Mass., June 10, 2015); *see* 35 U.S.C. §§ 311–319. The IPR procedure "was designed to give the agency an opportunity to correct its mistakes, to give courts the benefit of the agency's consideration of the effect of prior art on patents being asserted in litigation, and to reduce the burden of litigation on the parties and the courts." *Gratuity Sols, LLC v. Toast, Inc.*, 22-cv-11539-JEK, 2024 WL 1770816, at *2 (D. Mass. Apr. 24, 2024) (quoting *In re Intel Corp.*, 21-168, 2021 WL 4427875, at *2 (Fed. Cir. Sept. 27, 2021)). The Board institutes an IPR if "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* (quoting 35 U.S.C. § 314(a)). Once instituted, the Board must typically issue its final determination "not later than 1 year after" the institution of a review. 35 U.S.C. § 316(a)(11). If the IPR results in cancellation of a claim, "the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).

Here, six of the nine Asserted Patents are the subject of pending or pre-institution IPRs. New Balance has filed a petition challenging the '932 Patent (IPR2025-00020); an institution decision on that petition is due on June 20, 2025. In addition, lululemon filed IPRs challenging the '484 and '749 Patents (IPR2023-01460 and IPR2024-00460, respectively); these IPRs instituted on March 26, 2024 and August 9, 2024, respectively, meaning the final decisions are due by March 26, 2025 and August 9, 2025, respectively. *See* 35 U.S.C. § 316(a)(11). In instituting these IPRs, the Board concluded that lululemon had demonstrated "a reasonable likelihood" of success in

establishing that at least one of the challenged claims was invalid as obvious. *See* Exhibit A to the Declaration of Amadou K. Diaw ("Ex. A") at 2, 9, 11–12 (IPR2023-01460 Institution Decision); Exhibit B to the Declaration of Amadou K. Diaw ("Ex. B") at 19–20, 24–25 (IPR2024-00460 Institution Decision). Finally, Skechers has filed petitions challenging the '484 Patent (IPR2025-00142), the '749 Patent (IPR2025-00141), the '511 Patent (IPR2025-00144), the '562 Patent (IPR2025-00150), and the '636 Patent (IPR2025-00151). Institution decisions on these five petitions are due on June 20, 2025 (for the '484 and '749 Patents) and June 23, 2025 (for the remaining patents). Notably, the district court handling the Skechers action recently stayed that case pending institution decisions on the pending IPRs. *See* ECF No. 97, *Nike, Inc. v. Skechers U.S.A., Inc.* (C.D. Cal. Feb. 4, 2025) ("*Skechers* Order"); *see also infra*, pp. 12–13, 18.

In short, by August 9, 2025, the parties and the Court will know both the outcome of the lululemon IPRs challenging the '484 and '749 Patents and whether the Board decides to institute the IPRs filed by New Balance and Skechers challenging the '932, '749, '511, '562, and '636 Patents.

## III.   **LEGAL STANDARDS**

"The Court has the inherent power to manage its docket by staying proceedings, including pending IPR." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 18-cv-12029-ADB, 2019 WL 1767394, at *6 (D. Mass. Apr. 22, 2019) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) and *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (a "district court has inherent power to stay proceedings pending resolution of parallel actions in other courts"); *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848–49 (Fed. Cir. 2008) ("recogniz[ing] the inherent power of the district courts to grant a stay pending reexamination of a patent").

As the Federal Circuit has explained, granting a stay pending IPR can "simplify the rest of th[e] litigation, conserve resources, and eliminate inconsistent results." *Ultratec, Inc. v. CaptionCall, LLC*, 611 F. App'x 720, 722 (Fed. Cir. 2015). There is thus a "liberal policy in favor of granting motions to stay proceedings" pending the outcome of a PTO review, "especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *In re Body Science LLC Patent Litig.*, 12-cv-10536-FDS, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012) (quoting *Tse v. Apple Inc.*, 6-cv-6573-SBA, 2007 WL 2904279, at *1 (N.D. Cal. Oct. 4, 2007)). By staying a proceeding, a court "gives full effect to a process that was intended to 'settle validity disputes more quickly and less expensively' than litigation, and to 'allow courts to refer patent validity questions to the expertise of the PTO.'" *Id.* (quoting *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985)); *see also British Telecomms. PLC v. IAC/InterActive Corp.*, 18-cv-366-WCB, 2020 WL 5517283, at *4 (D. Del. Sept. 11, 2020) (staying action and citing the "courts in many other cases [that] have noted, and acted on, the liberal policy in favor of issuing stays pending post-grant proceedings").

Courts in this district consider three factors when determining whether to stay a case pending IPR: "(1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *ACQIS*, 109 F. Supp. 3d at 356. Here, all three factors weigh decisively in favor of a stay.

## IV.    ARGUMENT

### A.    The Vast Majority of this Litigation Lies Ahead

The first factor "is aimed at determining 'whether litigation has progressed significantly enough for a stay to be disfavored.'" *ACQIS*, 109 F. Supp. 3d at 357 (quoting *PersonalWeb Techs.,*

*LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014)). Courts thus consider whether "a significant amount of work still remains to be done by the parties and th[e] Court." *Id.* The relevant question is not when a case was filed, but rather how much work lies ahead. *See id.* at 356 (recognizing that a case need not be in an "incipient stage" for a stay to be appropriate); *see also Smartflash LLC v. Apple Inc.*, 621 F. Appx. 995, 1005 (Fed. Cir. 2015). Applying these principles here, the first factor weighs strongly in favor of a stay because this case is in its initial stages, "with claim construction, more discovery, and summary judgment ahead." *Gratuity Sols.*, 2024 WL 1770816, at *3.

### 1.  A claim construction order is months away and summary judgment and *Daubert* orders are over a year away.

There has been minimal motion practice in this case. The Court has issued only one substantive ruling: the order denying New Balance's partial motion to dismiss. D.I. 58. The parties are still in the midst of briefing claim construction and the *Markman* hearing is not scheduled until June 20, 2025. D.I. 65. The start of briefing on dispositive motions and *Daubert* motions is well over a year away, meaning a decision on those motions will likely not issue for at least eighteen months. *See* D.I. 73. Courts in this district routinely grant motions to stay in precisely these circumstances, and far more advanced circumstances as well. In *DiversiTech Corp. v. RectorSeal, LLC*, 20-11896-NMG, 2021 WL 2953324 (D. Mass. July 14, 2021), for example, the court granted a stay because, although the parties had "expended time, effort and expense with respect to the claim construction briefing that ha[d] occurred to date," "no claim construction hearing ha[d] yet occurred," discovery was ongoing, and dispositive motions were months away. *Id.* at *2; *see also Gratuity Sols.*, 2024 WL 1770816, at *3 (first factor weighed in favor of a stay where the parties had briefed claim construction, but the *Markman* hearing, "more discovery, and summary judgment" all lay ahead); *see also* ECF No. 240, *ModernaTX, Inc. v. Pfizer Inc.*, 22-cv-11378-

RGS (D. Mass. Apr. 12, 2024) ("*ModernaTX* Order") (first factor weighed in favor of a stay even where a "*Markman* order has already issued . . . and fact discovery closed several months ago").

It is particularly significant that the Court has not yet held a *Markman* hearing. The "Court's expenditure of resources is an important factor in evaluating the stage of the proceedings," and claim construction requires "substantial effort." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal., May 2, 2013). Thus, even where "the parties have already filed their claim construction briefs, courts view stay requests more favorably before the issuance of a claim construction order." *Rembrandt Wireless Techs., LP v. Qualcomm Inc.*, 19-cv-00705-JLS-JDE, 2020 WL 5044195, at *2 (C.D. Cal. Apr. 9, 2020) (granting stay pre-*Markman* hearing and citing cases doing the same); *see also MicroPairing Techs. LLC v. Am. Honda Motor Co.*, 21-cv-4034-JVS/KESx, 2022 WL 17219084, at *1 (C.D. Cal. June 24, 2022) (granting stay where court had "ruled on [defendant's] motion to dismiss," but, "[s]ignificantly, there has been no *Markman* hearing"); *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, 14-1153-VAP (SPx), 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (stay appropriate where the parties had "submitted claim construction briefs," but "the *Markman* hearing ha[d] not yet taken place and no disputed claim terms ha[d] been construed by th[e] Court"). As in these cases, "adjudicating claim construction and other disputes on patents that may be invalidated or amended" before trial "would needlessly consume judicial resources." *Rembrandt Wireless Techs.*, 2020 WL 5044195, at *2.

## 2.  Discovery is in its earliest stages.

There has "only been limited discovery" in this case. *Gratuity Sols.*, 2024 WL 1770816, at *3 (stay appropriate where the parties had not "noticed or taken any fact or expert depositions"); *see also Evolutionary Intel., LLC v. Apple, Inc.*, 13-cv-4201-WHA, 2014 WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) (stay appropriate where "substantial portions of discovery on the merits of this

action have yet to occur"). Fact discovery does not close for at least another nine months, and the parties have only exchanged one set of interrogatories and made modest initial productions. *See supra*, p. 3. Notably, the vast majority of the approximately 53,792 documents that Nike has produced in this case had previously been produced in other litigations, and the time and expense Nike may have incurred in producing these documents in a different matter cannot support a stay here. *See supra*, p. 3; *ACQIS*, 109 F. Supp. 3d at 356 (discounting the cost of document production where the patentee "sued three other defendants along with [the moving party], and there is overlap in the documents produced in each case"). Expert discovery is in an even earlier stage than fact discovery: there has been no exchange of expert reports and no expert depositions. *See supra*, p. 3.

Courts in this district have routinely granted stay requests where discovery was in a similar or more advanced posture. *See, e.g.*, *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, 15-cv-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016) (stay warranted where discovery had "just begun"); *ACQIS*, 109 F. Supp. 3d at 356 (stay appropriate even where document and written discovery were "underway" and "nearly 1.5 million pages of documents" had been produced).

### 3.  There is no trial date.

Finally, the lack of a trial date weighs further in favor of a stay. *See Irwin Indus. Tool Co.*, 2016 WL 1735330, at *2 (highlighting that "no trial date has been set" in granting stay); *ACQIS*, 109 F. Supp. 3d at 357 (same). The "most burdensome parts of the case for the parties and the court" are "preparation for trial, going through the trial process, and engaging in post-trial motions practice." *British Telecomms.*, 2020 WL 5517283, at *6. Not only are these stages far in the future—they are not even yet on the calendar. *See TAS Energy, Inc. v. San Diego Gas & Elec. Co.*,

12-cv-2777-GPC/BGS, 2014 WL 794215, at *3 (S.D. Cal. Feb. 26, 2014) (granting stay and explaining that if "no trial date has been set" then a "significant amount of work" remains).

* * *

In sum, "there is more work"—far more work—"ahead of the parties and the Court than behind." *MicroPairing Techs.*, 2022 WL 17219084, at *1 (quoting *Realtime Data LLC v. Teradata Ops., Inc.*, 16-cv-02743-AG/FFMx, 2017 WL 3453295, at *2 (C.D. Cal. Feb. 27, 2017)); *see also Tierravision, Inc. v. Google, Inc.*, 11-cv-2170-DMS/BGS), 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012) (granting stay where case had "progressed past the initial stages," but there was "much work yet to do"). The court must adjudicate claim construction and "a series of summary judgment motions, which will also require a tremendous amount of time and effort." *Tierravision*, 2012 WL 559993, at *2; *see also supra*, pp. 3, 7. Extensive discovery, including all expert discovery, has yet to be done, and then of course there is pre-trial preparation and trial itself—all huge expenditures of effort for the parties and the Court. *See Vivint, Inc. v. SkyBell Techs., Inc.*, 21-cv-9472-GW/GJSx, 2022 WL 18587113, at *2 (C.D. Cal. Nov. 9, 2022). This first factor thus weighs heavily in favor of a stay.

**B.    <u>A Stay Will Simplify the Issues and Promote Judicial Economy</u>**

**1.  The pending IPRs are likely to significantly pare down the products at issue.**

When evaluating a stay request, the question is not whether the Board's decision "will clearly eliminate all need for a trial," but rather whether it "is likely to simplify the issues for trial." *In re Body Science*, 2012 WL 5449667, at *5 (D. Mass) (explaining the importance of simplification "[e]ven if only some of the claims were narrowed or invalidated"). Courts thus routinely grant stays even where "the IPR proceedings do not involve all asserted patents or claims." *ACQIS*, 109 F. Supp. 3d at 358 (collecting cases). As these decisions recognize, a "more

10

limited review" can still "help simplify [a] case." *Serv. Sols. U.S., L.L.C. v. Autel.US Inc.*, 13-cv-10534, 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015); *see also ModernaTX* Order (concluding that second factor weighed in favor of a stay even though the pending IPR did not encompass all of the asserted patents); *Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*, 12-cv-1107-GMS, 2014 WL 1369721, at *5–6 (D. Del. Apr. 7, 2014) ("Contrary to [the plaintiff's] suggestion, there is no requirement that the issues in the IPR be identical to those in the litigation."). "Conversely, denying a stay entirely, or granting a stay only as to those patents and claims under IPR, could result in costly inefficiencies for the parties and the Court by introducing a need for certain portions of discovery and motion practice to be redone after the completion of the IPRs." *ACQIS*, 109 F. Supp. 3d at 358 (concluding that the second factor weighed in favor of a stay even where "the IPRs most likely w[ould] not eliminate the need for a trial").

Applying this standard here, the second factor weighs heavily in favor of a stay. While the pending IPRs will not entirely eliminate the case, they could still "substantially simplify the dispute." *In re Body Science*, 2012 WL 5449667, at *5. This case is a particularly strong candidate for a stay because it involves "a large number of claims and many different products." *Id.* (describing the benefits of simplification for a set of consolidated cases involving "more than a hundred claims asserted against dozens of products and product families"). This case currently involves 99 claims and 61 different pairs of shoes. "If this case proceeds to trial with all claims intact, plaintiff will have to prove infringement as to each claim and each product." *Id.* New Balance will then "argue noninfringement or invalidity as to each contested claim," meaning the "case will involve extensive claim construction, and the breadth of the allegations involved may require wide-ranging discovery." *Id.* If the IPRs result in narrowing or invalidating any of the asserted claims, however, "the scope of the litigation could be significantly simplified." *Id.* If all

six patents subject to pending IPRs are ultimately invalidated, then the total number of accused shoes will plummet from 61 pairs to approximately 12 pairs.[2] Diaw Decl. ¶ 12. Even if only a subset of the patents are invalidated, there is still substantial possibility for simplification. If all the patents subject to IPRs filed by Skechers are invalidated, for example, then the total number of accused shoes will drop to approximately 24 pairs. Diaw Decl. ¶ 13. And if both of the patents subject to the instituted IPRs filed by lululemon are invalidated, then the total number of accused shoes will drop to approximately 25 pairs. Diaw Decl. ¶ 14.

These outcomes are not just possible, but probable. Starting first with the pre-institution IPRs, the Board instituted IPRs for nearly 70% of all filed petitions in 2024—a number that has steadily increased over the last 5 years. *See* USPTO, PTAB TRIAL STATISTICS: FY24 END OF YEAR OUTCOME ROUNDUP 6, *available at* http://bit.ly/41e9ZXi ("PTAB Trial Statistics") (last accessed March 12, 2025); *see also In re Body Science*, 2012 WL 5449667, at *5 (relying on PTO statistics in evaluating a stay request). The Board is therefore likely to institute a significant portion of the pending IPRs. As the district court handling the related Skechers action explained in granting a stay, based on PTAB statistics "at least some invalidity findings are likely," and the benefits of simplification are high given the large number of asserted claims and accused products in the case. *Skechers* Order 5.

Even putting aside the four pending pre-institution IPRs, the Board has already concluded that lululemon has "a reasonable likelihood" of invalidating at least one of the challenged claims in each of the '484 and '749 Patents. *See* Ex. A at 2, 9, 11-12 (IPR2023-01460 Institution Decision); Ex. B at 19-20, 24-25 (IPR2024-00460 Institution Decision); *see also* 35 U.S.C.

---

[2] New Balance's assessment is based on its understanding of Nike's October 11, 2024 Initial Infringement Claim Charts, attached as Ex. D to the accompanying A. Diaw Declaration.

§ 314(a).[3] Given the "reasonable likelihood" standard, institution "ordinarily means that there is a substantial likelihood of simplification of the district court litigation." *Novoluto GMBH v. Uccellini LLC*, 20-cv-02284-MK, 2021 WL 2251911, at \*3 (D. Or. May 19, 2021)  (noting that the "grant of *inter partes* review is a highly significant factor in the courts' determination of whether to stay cases pending PTAB review") (citation and internal quotation marks omitted); *see also NFC Tech. LLC v. HTC Am., Inc.*, 2:13-CV-1058-WCB, 2015 WL 1069111, at \*4 (E.D. Tex. Mar. 11, 2015). Statistics again bear this out: Of the final written decisions issued in completed IPRs in the PTO's Fiscal Year 2023, 85% resulted in the cancellation of at least some challenged claims and 70% resulted in the cancellation of all challenged claims. *See* PTAB Trial Statistics at 10. There is thus a high likelihood that the '484 and '749 Patents will be invalidated, reducing the number of accused shoes by roughly two-thirds. *See supra*, pp. 11–12.[4]

Finally, in the unlikely event that "most or all of the claims survive IPR," the Board's order will nevertheless assist the court by providing "the PTAB's expert opinion." *Irwin Indus.*, 2016

---

[3] While a jury recently found the '749 Patent not invalid in Nike's case against lululemon (*supra*, pp. 2–3), that verdict does not weigh against a stay here. The lululemon IPR on the '749 Patent, which is fully briefed with a final written decision due by August 9, 2025, is based on different art than that asserted in the district court case, and the trial verdict therefore says nothing about lululemon's likelihood of invalidating the '749 Patent before the Board. The Skechers IPR on the '749 Patent (IPR 2025-00100), which is pending an institution decision, is likewise based on different art than that asserted in the *lululemon* district court case. Even if the IPRs for the '749 Patent were based on the same art, the jury verdict would still shed no light on how the Board will evaluate invalidity, particularly given its decision to institute review of the '749 Patent.

[4] While the parties in the *lululemon* proceeding recently stipulated to dismiss the claims based on the '484 Patent, *see* ECF No. 291, *Nike, Inc. v. lululemon USA Inc.*, Case No. 23-771 (S.D.N.Y. Feb. 17, 2025), they have not moved to terminate IPR2023-01460 challenging that patent. Even if the parties ultimately do move to terminate the IPR, Skechers has also filed a petition challenging the '484 Patent (IPR2025-00142). That petition (attached as Exhibit C to the Declaration of Amadou K. Diaw ("Ex. C")) relies on several of the same references the Board highlighted in its institution decision in IPR2023-01460, and is therefore likely to be instituted. *Compare* Ex. A (relying on prior art references Dua, Hong, and Lockwood), *with* Ex. C (likewise relying on prior art references Dua and Hong).

WL 1735330, at *3 (citing cases); *see also Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Americas., Inc.*, 15-cv-144, 2015 WL 6394436, at *3 (S.D. Tex. Oct. 22, 2015) ("Even assuming that all of the patents-in-suit survive the IPR intact, the PTAB's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court."); *see also WSOU Invs. LLC v. Juniper Networks Inc.*, 21-cv-7557-BLF, 2022 WL 19709, at *4 (N.D. Cal. Jan. 3, 2022) (citing cases finding that, "regardless of the outcome of the post-grant proceedings, [courts] benefit from the PTAB's consideration of the claims"). Thus, regardless of outcome, the IPR will provide at least some simplification. *See DiversiTech Corp.*, 2021 WL 2953324, at *3.[5]

### 2.  A stay makes particular sense in this case.

Courts in this district routinely stay cases before an institution decision—an approach from which Nike itself recently benefited. *See, e.g.*, ECF No. 69, *SherryWear, LLC v. Nike, Inc.*, 23-cv-11599 (D. Mass., Sept. 3, 2024) ("[T]he fact that the PTAB has not yet acted on Nike's petitions does not render the stay request premature or otherwise warrant denial of Nike's motion in the circumstances of this case."). If the case proceeds now, the parties will "move through several labor-intensive stages of litigation that may ultimately be rendered meaningless or duplicative"— in particular, claim construction and much of fact discovery. *NST Glob., LLC v. SIG Sauer Inc.*, 19-cv-792-PB, 2020 WL 1429643, at *4 (D.N.H. March 24, 2020) (granting stay where court

---

[5] The Board's decisions will assist the court regardless of whether New Balance is a party to a particular IPR. In the event the Board invalidates a patent, then Nike will be unable to assert that patent against any party in litigation. *See Fresenius USA, Inc.*, 721 F.3d at 1340. And even if the Board does not invalidate a patent, the Board's reasoning may nevertheless still be instructive. *See, e.g.*, *Transocean Offshore Deepwater Drilling*, 2015 WL 6394436, at *3. Courts in this district thus routinely grant stays even when the IPRs at issue were filed by third parties. *See, e.g.*, *In re Body Sci.*, 2012 WL 5449667, at *5 (granting stay and rejecting argument that pending proceedings would not simplify the case where the defendant would "not be bound by the PTO's determination"); ECF No. 37, *Ocean Semiconductor LLC v. Analog Devices, Inc.*, 20-cv-12310 (D. Mass. Sept. 20, 2021).

would "likely issue a *Markman* order before the PTO decides whether to institute IPR"); *see also Provisur Techs., Inc. v. Weber, Inc.*, 19-cv-6021-SRB, 2019 WL 4131088, at \*2 (W.D. Mo. Aug. 29, 2019) ("[T]he IPR proceedings' potential impact is enough to await at least the [PTO's] initial institution decisions before moving forward").

It makes particular sense here to issue a stay pending the Board's institution decisions. The Board is slated to issue a final decision in the lululemon IPR challenging the '749 Patent by August 9, 2025, at which point the Board will have issued institution decisions on all of the pending IPRs. *See* 35 U.S.C. § 316(a)(11); *supra*, pp. 4–5. It therefore creates no additional delay to include the pending IPRs when evaluating whether to stay the case through the Board's decisions in the already instituted lululemon IPRs.

### C.     <u>Nike Will Not Suffer Undue Prejudice or a Tactical Disadvantage from a Stay</u>

A stay will not prejudice Nike, much less unduly so. Notably, "mere delay does not rise to the level of undue prejudice." *ACQIS*, 109 F. Supp. 3d at 358 (citation omitted). Nike therefore must show more than that it will be "temporarily prevented from asserting its rights as a patent-holder." *SurfCast, Inc. v. Microsoft Corp.*, 12-cv-333-JDL, 2014 WL 6388489, at \*3 (D. Me. Nov. 14, 2014). Nike cannot make that showing here.

#### 1.   **Nike cannot show prejudice based on its status as a New Balance competitor.**

While a stay can create a risk of prejudice where the parties are competitors, there is minimal risk of prejudice here. First, New Balance and Nike are not the sole competitors in the crowded market for athletic shoes. As Nike itself notes in the Complaint, it has pursued "many" competitors for alleged unauthorized use of the Flyknit technologies at issue here. D.I. 1 ¶ 3. The operation of these "other competitors in the market undermines" any assertion Nike might make "of undue prejudice because of loss of market value." *Air Vent, Inc. v. Owens Corning Corp.*, 12-

cv-1699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012); *see also Teva Pharms.*, 2019 WL 1767394, at *8 ("the presence of other firms in the market decreases the likelihood of prejudice"); *Neste Oil OYJ v. Dynamic Fuels, LLC*, 12-cv-1744-GMS, 2013 WL 3353984, at *3 (D. Del. July 2, 2015) (same).

Relatedly, Nike has not provided any "evidence of competitor injury" necessary for a court to find prejudice on the basis of the parties' status as competitors. *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, 13-cv-02013-JST, 2014 WL 5021100, at *4 (N.D. Cal. Oct. 7, 2014). Mere "allegations" of competitive harm, "not supported by any evidence," are insufficient. *Id*. at *4-5 (citing cases and noting that "the case law . . . requires evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party"). So too is "attorney argument." *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1037–38 (N.D. Cal., Oct. 9, 2015) (absent evidence, there was "no basis" for the court to find that a stay "would prejudice [the non-movant's] competitive position in the marketplace"). The non-moving party must identify, for example, customers that "have in fact purchased [the] allegedly infringing" product "when they would otherwise have purchased" the non-movant's product, or show that the non-moving party "has lost . . . market share" to the moving party. *Cypress Semiconductor Corp.*, 2014 WL 5021100, at *4; *see also Irwin Indus.*, 2016 WL 1735330, at *4 (noting the lack of "evidence before the court showing that [the non-movant] has suffered erosion of its market share following . . .  introduction of the allegedly infringing product"). Here, however, Nike has identified no evidence showing that it has lost customers or market share to New Balance. As discussed above, the relevant market is athletic shoes and, as is evidenced by Nike's numerous lawsuits against other competitors, this is not a situation where the parties are the only market participants. *See supra*, p. 15; *cf. Mizuho*

*Orthopedic Sys., Inc. v. Allen Med. Sys., Inc.*, 610 F. Supp. 3d 362, 366 (D. Mass., July 6, 2022) (finding third factor weighed against a stay where "market is limited to the parties in this case").

Finally, even where the market has relatively few competitors, "[m]oney damages and, in appropriate cases, a permanent injunction are ordinarily adequate to remedy harm caused by infringement, including loss of sales and market share." *Oticon A/S v. GN Resound A/S*, 15-cv-2066-PJS/HB, 2015 WL 5752429, at *2 (D. Minn. Aug. 5, 2015). Nike cannot show that a stay will cause it "to lose any presently available legal remedies, such as money damages or the opportunity to obtain a declaratory judgment." *Teva Pharms.*, 2019 WL 1767394, at *8. Nor can Nike point to any possible delay in its recovery: As the prevailing party, it will be able to "recover prejudgment interest." *Id*. (recognizing that any delay in recovery "is not meaningful").

In sum, even recognizing that Nike and New Balance are competitors, "the undue prejudice factor is not overborne by the fact of the parties' business relationship alone." *Id*.

### 2. Nike's actions belie any claim of undue prejudice or tactical disadvantage.

Nike's litigation conduct undermines any claim it might make of undue prejudice. First, Nike never moved for a preliminary injunction, "suggest[ing] that any prejudice that might result from a stay is not as severe as it contends." *Amsted Rail Co., Inc. v. Hum Indus. Tech., Inc.*, 22-cv-445-AGF, 2023 WL 2864553, at *5 (E.D. Mo. Apr. 10, 2023) (citation omitted). Courts have repeatedly recognized that a plaintiff's decision not to seek preliminary injunctive relief is "significant" when assessing the risk of prejudice or claims that monetary damages are insufficient. *ZeaVision, LLC v. Bausch & Lomb Inc.*, 21-cv-739-RWS, 2022 WL 715013, at *5 (E.D. Mo. Mar. 10, 2022); *see also Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 76 (ED Pa., Mar. 24, 2014) ("'[M]any courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief.'") (quoting *Zillow, Inc. v. Trulia, Inc.*, 12-cv-1549-JLR, 2013 WL 5530573, at *6 (W.D. Wash. Oct.

7, 2013)); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 13-cv-24002, 2014 WL 12600144, at *7 (D. Minn. Oct. 10, 2014) (rejecting argument that monetary damages were insufficient when patentee failed to move for a preliminary injunction). As the Federal Circuit has explained, "the fact that it was not worth the expense to ask for this remedy contradicts" any later assertion by the plaintiff "that it needs injunctive relief as soon as possible." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318–19 (Fed. Cir. 2014) (reversing the district court's denial of a motion to stay pending post-grant proceedings). Applying this reasoning, the Skechers court likewise concluded that a stay was appropriate notwithstanding the parties' status as competitors. *See Skechers* Order 6-7 (noting that, while Nike and Skechers are competitors, Nike did not move for a preliminary injunction and did not seek lost profits, which "further mitigates prejudice caused by the parties' direct competitor status").

Second, Nike initially contacted New Balance about alleged infringement on January 31, 2023, but then waited almost ten months (to November 6, 2023) before filing suit. *See* D.I. 1 ¶ 13. "This delay demonstrates some lack of urgency in the prosecution of this case," thus undermining any "claim of undue prejudice." *Irwin Indus.*, 2016 WL 1735330, at *5 (three-month delay between filing of complaint and service undercut claim of prejudice).

Finally, nothing in the case suggests that New Balance's actions are a tactic intended to delay trial. New Balance filed its IPR petition for the '932 Patent before the statutory deadline, and within a month of receiving Nike's initial infringement contentions. Diaw Decl. ¶ 15. As another court in this district has explained, given "the fees associated with filing IPR petitions, and the PTAB's page limits for IPR petitions," it is "reasonable" for the defendant "to wait for [the plaintiff] to choose which claims it intended to assert in the litigation before pursuing IPRs." *ACQIS*, 109 F. Supp. 3d at 359. Once Nike "served its infringement contentions, [New Balance]

18

prepared and filed its IPR petition[] in a timely manner"—indeed, far faster than the period other courts have recognized as "diligent." *Id.* (defendant was not dilatory by serving its IPR petition four months after receiving the plaintiff's infringement contentions); *NFC Tech.*, 2015 WL 1069111, at *4 (same).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, New Balance respectfully requests that the Court grant its motion and stay this case through, at a minimum, August 9, 2025, at which point the parties will have (1) final written decisions in *Inter Partes* Review ("IPR") Nos. IPR2023-01460 and IPR2024-00460; and (2) institution decisions in IPR Nos. IPR2025-00020, IPR2025-00142, IPR2025-00141, IPR2025-00144, IPR2025-00150, and IPR2025-00151.

Dated: March 14, 2025

Respectfully submitted,

NEW BALANCE ATHLETICS, INC.,

By its attorneys,

*/s/ Douglas J. Kline*
Douglas J. Kline (BBO# 556680)
Christie Larochelle (BBO #705561)
Adrian Santiago Ortiz (BBO# 713630)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
dkline@goodiwnlaw.com
clarochelle@goodwinlaw.com
asantiagoortiz@goodwinlaw.com

Amadou K. Diaw (*pro hac vice*)
Jacqueline G. Bova (*pro hac vice*)
Kelly Grosshuesch (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N St. NW
Washington, DC 20036
Tel.: (202) 346-4191
Fax: (202) 204-7272
adiaw@goodiwnlaw.com
jbova@goodwinlaw.com

Jenevieve Nutovits (*pro hac vice*)
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
jnutovits@goodwinlaw.com

*Attorneys for Defendant New Balance Athletics, Inc.*

## **LOCAL RULE 7.1(A)(2) CERTIFICATE and CERTIFICATE OF SERVICE**

I hereby certify that counsel for Defendant conferred with counsel for Plaintiff regarding the relief requested herein and counsel for Plaintiff opposes Defendant's request. I further certify that the foregoing document was filed via the CM/ECF system and was served electronically to registered participants as indicated on the Notice of Electronic Filing (NEF), and by first class mail to non-registered participants this 14th day of March, 2025.

*/s/ Douglas J. Kline*