UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

NIKE, INC.,

    Plaintiff, Counter-Defendant,

vs.

NEW BALANCE ATHLETICS, INC.,

    Defendant, Counter-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

Case No. 1:23-cv-12666-JEK

## NIKE'S MEMORANDUM OF LAW IN OPPOSITION TO NEW BALANCE'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

## TABLE OF CONTENTS

I.     **INTRODUCTION**........................................................................................................1

II.    **FACTUAL BACKGROUND** ...................................................................................3

     A.    This Action...................................................................................................3

     B.    The IPRs......................................................................................................4

III.   **LEGAL PRINCIPLES** ..........................................................................................5

     A.    *Inter Partes* Review ...................................................................................5

     B.    The Stay Determination ..............................................................................7

IV.   **ARGUMENT**..........................................................................................................7

     **A.**    Factor One: Courts Deny Stays in Cases at Similar Stages ......................7

     **B.**    Factor Two: A Stay Will Not Resolve All Triable Issues ........................9

     **C.**    Factor Three: A Stay Will Prejudice Nike ..............................................12

V.    **CONCLUSION** ....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*ACQIS, LLC v. EMC Corp.*,
  109 F. Supp. 3d 352 (D. Mass. 2015) ............................................................................7

*adidas AG v. Nike, Inc.*,
  IPR2016-00922, Paper No. 31 (P.T.A.B. Feb. 19, 2019) ...............................................4

*Boston Sci. Corp. v. Cordis Corp.*,
  777 F. Supp. 2d 783 (D. Del. 2011)..............................................................................13

*Cardionet, LLC v. InfoBionic, Inc.*,
  2015 WL 13849810 (D. Mass. Nov. 20, 2015) ...............................................................1

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*,
  2014 WL 2854656 (S.D.N.Y. June 20, 2014) .....................................................2, 8, 13

*Clinton v. Jones*,
  520 U.S. 681 (1997)........................................................................................................7

*Cont'l Can Co. USA v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991).................................................................................3, 16

*Copy Protection LLC v. Netflix, Inc.*,
  No. 14-cv-365, 2015 WL 3799363 (D. Del. June 17, 2015...........................................8

*DiversiTech Corp. v. RectorSeal, LLC*,
  2021 WL 2953324 (D. Mass. July 14, 2021)..................................................................8

*ePropelled Inc. v. Exro Tech. Inc.*,
  No. 1:22-cv-10090, ECF No. 51 (D. Mass. Jul. 25, 2022) ......................................1, 10

*Gratuity Sols., LLC v. Toast, Inc.*,
  2024 WL 1770816 (D. Mass. Apr. 24, 2024) .................................................................8

*Invensas Corp. v. Samsung Elecs. Co., Ltd.*,
  No. 17-cv-1363, 2018 WL 4762957 (D. Del. Oct. 2, 2018)...........................................8

*Koninklijke Philips N.V. v. Amerlux, LLC*,
  167 F.Supp.3d 270 (D. Mass. Mar. 10, 2016) ...................................................9, 11, 16

*LakeSouth Holdings, LLC v. Ace Evert, Inc.*,
  No. 3:14-cv-1348, 2015 WL 10818619 (N.D. Tex. June 17, 2015)...............................8

*Lexos Media IP, LLC v. Overstock.com, Inc.*,
    2023 WL 5625436 (D. Kan. Aug. 31, 2023) ...................................................11, 16

*MiMedx Grp., Inc. v. Tissue Transplant Tech.*,
    No. SA-14-CA-719, 2015 WL 11573771 (W.D. Tex. Jan. 5, 2015) ......................8

*Mizuho Orthopedic Sys., Inc. v. Allen Md. Sys., Inc.*,
    610 F. Supp. 3d 362 (D. Mass. 2022) ...................................................................7

*Netlist, Inc. v. Samsung Elec. Co.*,
    No. 2:22-cv-00293, ECF No. 710 (E.D. Tex. Jun. 11, 2024) .................................12

*New Jersey v. Trump*,
    2025 WL 759612 (1st Cir. Mar. 11, 2025) ...........................................................7

*Nike, Inc. v. lululemon usa, inc.*,
    No. 1:23-cv-00771, ECF No. 314 (S.D.N.Y.) .......................................................4

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................7

*Plastipak Packaging Inc. v. Ice River Springs Water Co. Inc.*,
    No. 1:19-cv-11193, ECF Nos. 95, 99 (D. Mass. Feb. 24, 2020) .........................7, 10

*Polaris Innovations Ltd. V. Kingston Tech. Co., Inc.*,
    No. 16-cv-300, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016) .................................8

*Rensselaer Polytech. Inst. v. Apple Inc.*,
    2014 WL 201965 (N.D.N.Y. Jan. 15, 2014) ........................................................6, 7

*Singular Computing v. Google*,
    No. 19-cv-12551, ECF No. 103 (D. Mass. Dec. 3, 2020)......................................2, 9

*Sonrai Memory Ltd. V. Micron Tech., Inc.*,
    No. 1:23-cv-01407, 2024 WL 5185357 (W.D. Tex. May 29, 2024).......................11

*Sotera Wireless, Inc. v. Masimo Corp.*,
    IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020)................................................6

*Trover Grp., Inc. v. Dedicated Micros USA*,
    2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) .....................................................8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. 2013) ..............................................................5, 15

*Universal Secure Registry, LLC v. Apple Inc.*,
2018 WL 4486379 (D. Del. Sept. 19, 2018)............................................................9

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018)........................................................................6

## **Statutes & Regulations**

35 U.S.C. § 311(b)............................................................................................5

35 U.S.C. § 314.............................................................................................5, 6

35 U.S.C. § 315(e)(2)........................................................................................5

35 U.S.C. § 316(a)............................................................................................6

## I.   INTRODUCTION

New Balance's motion to stay should be denied at least because it is premature. New Balance seeks a stay through August 9, 2025, pending final written decision or decisions on institution for several *inter partes* reviews ("IPRs") filed by third-parties, not New Balance. ECF No. 82 ("Motion") at 1. New Balance argues that, after August 9, 2025, the parties "can propose whether to move ahead with litigation or continue the stay." *Id.* at 2. But staying this case from now until August 9 makes little sense. Rather than granting a stay now, only to reassess shortly thereafter, the Court should deny New Balance's motion without prejudice to renew after August 9, 2025. At that point, the parties will have "significantly more information about the status of the IPRs." *Id.*; *see, e.g.*, Harris Decl., Ex. A [*ePropelled Inc. v. Exro Tech. Inc.*, No. 1:22-cv-10090, ECF No. 51 (D. Mass. Jul. 25, 2022)] (denying stay without prejudice to "renewal of the motion if the PTAB grants the pending petition for review").

Every petition for IPR of the Asserted Patents that New Balance relies on in its Motion was on file as of November 2024. New Balance could have moved to stay at that point, but it chose to wait. New Balance can continue to wait until, as it admits, the parties have a better understanding of the relevant IPR landscape. The only major case event in the interim is the *Markman* hearing. It makes more sense to hold that hearing as scheduled—after the parties complete claim construction briefing—than to postpone it. This is especially true because three of the parties' six disputed claim terms appear in patents that are not challenged in any IPR petitions or proceedings.

Because New Balance's motion is premature, the Court need not yet reach the three factors courts consider when determining whether or not to grant a stay. *See Cardionet, LLC v. InfoBionic, Inc.*, 2015 WL 13849810, at *2 (D. Mass. Nov. 20, 2015). But even if it does, those three factors, on balance, support denial of New Balance's Motion.

First, the stage of the case is at most neutral, and in any case is significantly outweighed by factors two and three. Nike filed this case on November 6, 2023—more than 16 months ago. The Court considered, heard argument about, and denied New Balance's partial motion to dismiss. The parties have exchanged significant written discovery and documents, have served invalidity and infringement contentions, and have completed claim construction briefing. And pursuant to Local Rule 16.6(c)(1), trial must be scheduled within 24 months of the initial scheduling conference, which would be September 2026. Courts routinely deny stays in earlier stages. *E.g.*, Harris Decl., Ex. B [*Singular Computing LLC v. Google LLC*, No. 19-cv-12551, ECF No. 103 (D. Mass. Dec. 3, 2020)]; *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, 2014 WL 2854656 (S.D.N.Y. June 20, 2014).

Second, a stay will <u>not</u> resolve even close to all triable issues in this case. A stay will not resolve any issues for the three Asserted Patents against which no IPR petitions have been filed. For four of the six Asserted Patents subject to challenge, the Board has not yet decided whether or not to institute review. There is no guarantee for any of those four patents that the Board will institute review. Further, the petitions in all but one of the six challenged patents were filed—not by New Balance—but by third parties (two by lululemon and five by Skechers). This is significant because, even if institution is granted, those third-party IPRs will not narrow the validity issues in this case. New Balance is not a party to those petitions. New Balance has not offered any prior art stipulation and will not be bound by IPR estoppel, which prevents IPR petitioners from getting a second bite at the apple by asserting duplicative prior art that was or reasonably could have been raised in IPR in district court.

Third, Nike will be prejudiced by a stay. It's undisputed that Nike and New Balance are direct competitors in the athletic apparel and footwear marketplace. New Balance continues to

manufacture and sell products that Nike accuses of infringing five active patents. District courts place significant emphasis on this consideration and are "generally reluctant to stay proceedings where the parties are direct competitors." *See Inari Med., Inc. v. Inquis Med., Inc.*, 2025 WL 637958, *3 (D. Del. Feb. 27, 2025). A stay would also jeopardize Nike's ability to pursue discovery critical to its infringement case. New Balance routinely cycles through products, releasing new products and discontinuing old products. Evidence of the methods of manufacture of New Balance's products—relevant to the claims of several of the Asserted Patents—is in the hands of New Balance's foreign manufacturers. That information may no longer be accessible from the manufacturers if this case is stayed even until August 9. Further, a stay pending final resolution of Skechers' IPRs would likely postpone this case for years. Nike's interest in the speedy resolution of its claims would be "ill served by delay in final resolution." *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1266 (Fed. Cir. 1991).

For these reasons and for those described in detail below, Nike requests that the Court deny New Balance's Motion.

## II.    FACTUAL BACKGROUND

### A.    This Action

Nike filed this suit against New Balance in November 2023—more than 16 months ago. Nike alleges infringement of nine patents directed to Nike's Flyknit technology:  U.S. Patent Nos. 8,266,749 (the "'749 Patent"), 8,898,932 (the "'932 Patent"), 9,060,562 (the "'562 Patent"), 9,510,636 (the "'636 Patent"), 9,730,484 (the "'484 Patent"), 9,907,350 (the "'350 Patent"), 9,918,511 (the "'511 Patent"), 9,924,758 (the "'758 Patent"), and 11,707,105 (the "'105 Patent") (collectively, the "Asserted Patents"). ECF No. 1. Discovery opened on September 3, 2024, and the Court issued a Scheduling Order on September 23, 2024. ECF No. 65.

New Balance filed a partial motion to dismiss the '350, '511, and '758 patents on January 12, 2024. ECF Nos. 28, 29. The Court heard argument on New Balance's motion on March 6, 2024. ECF No. 47. The Court denied New Balance's motion on August 13, 2024. ECF No. 51; Motion at 3.

The parties have each served interrogatories and requests for production of documents. Harris Decl. at ¶5. Nike has produced approximately 53,580 documents, and New Balance has produced approximately 11,273 documents. *Id.* at ¶6. The parties made their respective disclosures pursuant to Local Rule 16.6(d)(1) and (4), including infringement claim charts and invalidity claim charts. ECF No. 65 at 3. The parties also filed opening claim construction briefs on February 25, 2025, and responsive briefs on March 27, 2025. *Id.* A *Markman* hearing is scheduled for June 20, 2025. New Balance moved to stay this case on March 14, 2025. ECF No. 82.

**B.    The IPRs**

IPR petitions have been filed against six of the nine Asserted Patents, leaving three of the Asserted Patents unchallenged. There is only one currently pending IPR. The Board has yet to issue institution decisions for four of the six challenged patents. New Balance itself challenges only one patent—the '932 patent.

In total, New Balance filed IPR petitions against only two of the nine Asserted Patents: the '749 patent (IPR2024-00778) and the '932 patent (IPR2025-00020). The Board denied institution of New Balance's '749 patent petition[1] in September 2024. Harris Decl., Ex. C. The Board's institution decision on New Balance's '932 patent petition (the "New Balance Petition") is due in June 2025.

---

[1] The '749 patent survived an IPR filed by adidas in 2016. *adidas AG v. Nike, Inc.,* IPR2016-00922, Paper No. 31 (P.T.A.B. Feb. 19, 2019). A jury also recently upheld the validity of the '749 patent in *Nike, Inc. v. lululemon usa, inc.*, No. 1:23-cv-00771 (S.D.N.Y.). Harris Decl., Ex. D.

lululemon has one pending IPR (the "lululemon IPR") against the '749 patent (IPR2024-00460)[2]. Final written decision is due in that IPR by August 9, 2025 ('749 patent IPR).

Skechers filed IPR petitions (the "Skechers Petitions") against five of the Asserted Patents—the '749 (IPR2025-00141), '484 (IPR2025-00142), '562 (IPR2025-00150), '636 (IPR2025-00151), and '511 (IPR2025-00144) patents—in November 2024. The Board will render institution decisions for all the Skechers Petitions by June 23, 2025. If instituted, the PTAB will likely issue final written decision in June 2026.

## III.  LEGAL PRINCIPLES

### A.  *Inter Partes* Review

Congress created IPRs to further the goal of establishing "a more efficient and streamlined patent system." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1029 (C.D. Cal. 2013). An IPR petitioner may challenge the patentability of a patent claim only on grounds that could be raised under 35 U.S.C. §§ 102 (anticipation) or 103 (obviousness), and then "only on the basis of prior art consisting of patents or printed publication." 35 U.S.C. § 311(b).

As part of its "streamlined" system, the Board decides whether or not to institute review roughly six months after receiving the petition. *See* 35 U.S.C. § 314. The Board "***may not*** authorize an *inter partes* review to be instituted unless the Director determines that the information presented . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* (emphasis added). The Board may decline to institute proceedings for a host of reasons, including reasons related to: (i) timing, 35 U.S.C. § 315(b) and 37 C.F.R. § 42.104; (ii) standing, 35 U.S.C. § 312(a)(2) and 37 C.F.R. § 42.101(b); (iii) real party in interest, 35 U.S.C. § 312(a)(2) and 37 C.F.R. § 42.101(b); (iv) duplicative

---

[2] The Board issued a Final Written Decision in lululemon's IPR challenging the '484 patent (IPR2023-01460) on March 21, 2025.

proceedings, 35 U.S.C. § 325(d) and 37 C.F.R. § 42.108(b); (v) lack of particularity, 35 U.S.C. § 312 (a)(3); and/or (vi) failure to show a reasonable likelihood of prevailing, 35 U.S.C. § 314(a). If review of the challenge is instituted, the Board issues a Final Written Decision (FWD) within one year of the institution decision, but may extend that date up to six months for good cause. 35 U.S.C. § 316(a)(11).

District courts apply a preclusive effect against IPR petitioners in two circumstances: (i) IPR estoppel, which applies upon the Board's issuance of a FWD (35 U.S.C. § 315(e)(2)); and (ii) a prior art stipulation which applies upon institution if the petitioner so stipulates in their petition (*e.g.*, *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 13–14 (PTAB Dec. 1, 2020)). In both cases, the patent challenger is precluded from asserting grounds of invalidity that it "raised or reasonably could have raised" in the IPR proceedings. In other words, the scope of preclusion is only as broad as the scope of an IPR proceeding: it precludes only anticipation and obviousness challenges, and only those based on prior art consisting of patents or printed publications. *Rensselaer Polytech. Inst. v. Apple Inc.*, 2014 WL 201965, at *7 (N.D.N.Y. Jan. 15, 2014).

If the Board issues a FWD finding claims unpatentable, that decision only becomes final if (1) Patent Owner does not appeal, or (2) after review by the Federal Circuit.[3] *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018). Thus, where a patent owner appeals an adverse finding in IPR, the Board's decision will not have preclusive effect on other litigations involving the patent claims until the Federal Circuit renders an opinion.

---

[3] This discounts the remote possibility that either party is granted *en banc* review at the Federal Circuit or Certiorari to the Supreme Court.

## B. The Stay Determination

District courts are charged with the power to control their dockets, including the discretion to grant a stay. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). A stay "is an intrusion into the ordinary processes of administration, and accordingly is not a matter of right." *New Jersey v. Trump*, 2025 WL 759612, *3 (1st Cir. Mar. 11, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). Thus, "the party seeking the stay … bears the burden of providing that the circumstances justify one." *Id.*

Courts typically consider three factors when determining whether a stay is appropriate: (1) the stage of the litigation; (2) whether a stay will simplify the issues; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party. *Mizuho Orthopedic Sys., Inc. v. Allen Md. Sys., Inc.*, 610 F. Supp. 3d 362, 365 (D. Mass. 2022); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. June 10, 2015).

## IV. ARGUMENT

### A. Factor One: Courts Deny Stays in Cases at Similar Stages

The stage-of-litigation factor is at most neutral, and in any case is significantly outweighed by factors two and three discussed below. This case has been pending for going on a year-and-a-half. *See supra* § II.A. The parties have exchanged significant written discovery and documents, and completed claim construction briefing on March 27, 2025. *See supra* § II.A. And although the *Markman* hearing lies ahead, courts in this District and across the country have denied stays at similar stages. *See, e.g.*, Harris Decl., Exs. E, F [*Plastipak Packaging Inc. v. Ice River Springs Water Co. Inc.*, No. 1:19-cv-11193, ECF Nos. 95, 99 (D. Mass. Feb. 24, 2020)] (denying stay after claim construction briefing but before Court held *Markman* hearing); *Rensselaer*, 2014 WL 201965 at *8–9 (finding no "justification for halting the claim construction process, at least prior to determination of whether IPR will be granted" and no "sound basis to place this case on hold

during the pendency of the IPR petition and preclude the parties from continuing to engage in pretrial discovery."); *Invensas Corp. v. Samsung Elecs. Co., Ltd.*, No. 17-cv-1363, 2018 WL 4762957, at \*4 (D. Del. Oct. 2, 2018); *Copy Protection LLC v. Netflix, Inc.*, No. 14-cv-365, 2015 WL 3799363, at \*1 (D. Del. June 17, 2015); *Trover Grp.*, 2015 WL 1069179, at \*3–4 (E.D. Tex. Mar. 11, 2015); *Polaris Innovations Ltd. V. Kingston Tech. Co., Inc.*, No. 16-cv-300, 2016 WL 7496740, at \*2 (C.D. Cal. Nov. 17, 2016); *MiMedx Grp., Inc. v. Tissue Transplant Tech.*, No. SA-14-CA-719, 2015 WL 11573771, at \*2 (W.D. Tex. Jan. 5, 2015); *LakeSouth Holdings, LLC v. Ace Evert, Inc.*, No. 3:14-cv-1348, 2015 WL 10818619, at \*3 (N.D. Tex. June 17, 2015). Indeed, Courts deny stays in far more nascent litigations. *See CDX Diagnostics*, 2014 WL 2854656, at \*4 (denying stay where the action was in "the very early stages of its lifespan" with "[l]ittle to no discovery ha[ving] taken place.").

New Balance cites two cases in this District that allegedly granted motions to stay in "precisely these circumstances." Motion at 7. Both are easily distinguishable. In *DiversiTech Corp.*, defendant filed an IPR petition challenging all claims asserted in the district court case. *DiversiTech Corp. v. RectorSeal, LLC*, 2021 WL 2953324, at \*3 (D. Mass. July 14, 2021). And in *Gratuity Solutions*, the PTAB already instituted defendant's IPR challenging all claims of the sole remaining patent. *Gratuity Sols., LLC v. Toast, Inc.*, 2024 WL 1770816, at \*4 (D. Mass. Apr. 24, 2024). Here, three patents are unchallenged and New Balance bases its Motion primarily on pre-institution petitions filed by third-parties.

Rather than interrupt fact discovery, efficiency would be better served by waiting until the PTAB renders institution decisions on the New Balance and Skechers Petitions. The Court could then better assess the overlap between the issues in this case and the IPRs.

**B. Factor Two: A Stay Will Not Resolve All Triable Issues**

The simplification of the issues factor weighs against a stay because a stay will not resolve even close to all triable issues in this case. Nike asserts nine patents in this case. *See supra* § II.A. Only six of the nine asserted patents are subject to an IPR challenge. Of the six patents subject to an IPR challenge, the Board has not yet decided whether it will conduct a review of four. And of the pending and pre-institution IPRs, New Balance is the petitioner in only one. This unique set of circumstances counsels against a stay for several reasons.

First, a stay will not resolve any issues concerning the '350, '758, and '105 patents, which are not subject to any IPR challenge. A stay will not resolve the validity or infringement issues for those patents, nor will it impact claim construction issues for those patents. Courts deny stays where unchallenged patents would "languish" on the docket. *E.g.*, *Koninklijde Phillips*, 167 F.Supp.3d at 275 (denying stay where unchallenged patents "will 'languish' during the pendency of the IPR").

Second, any chance of simplification stemming from the New Balance or Skechers Petitions is reduced, as the PTAB has not even decided whether or not it will initiate a review of those patents. *See Universal Secure Registry, LLC v. Apple Inc.*, 2018 WL 4486379, at *2 (D. Del. Sept. 19, 2018) ("Unless and until the PTAB institutes IPR … based on the petitions, any expected simplification rests on speculation that such institution will occur."); Harris Decl., Ex. B [*Singular Computing,* No. 1:19-cv-12551 at ECF No. 103] ("Although defendant has filed multiple petitions for inter partes review, the [PTAB] has not made a determination as to whether to institute such a review. Under the circumstances, the balance of competing interests weighs in favor of denying the stay and permitting discovery to continue.").

The PTAB will issue institution decisions for the New Balance and Skechers Petitions in less than three months. At that point, as New Balance admits, "the parties will have significantly

more information about the status of the IPRs." Motion at 2. This Court should do as other courts in this District have done, and deny New Balance's motion without prejudice so that it may refile after the Board decides whether or not to institute.[4] *See* Harris Decl., Ex. A [*ePropelled*, 1:22-cv-10090 at ECF No. 51] (denying motion to stay "without prejudice to a renewal of the motion if the PTAB grants the pending petition for review"); *id.*, Ex. F [*Plastipak*, No. 1:19-cv-11193 at ECF No. 99] (denying motion to stay pending pre-institution third-party IPR "without prejudice to renew").

Third, even assuming the Board institutes any of the five Skechers Petitions, any resulting simplification of this case is unlikely to occur for several years. This is because New Balance is not subject to the IPR mechanisms designed to block duplicative efforts between PTAB and district court proceedings. New Balance won't be bound by any prior art stipulation or IPR estoppel (*see supra* § III.A), as New Balance is not a party to those proceedings. Any simplification, therefore, would come only from a finding of unpatentability after all appeals are exhausted.

While New Balance could bind itself by joining the Skechers Petitions[5], if instituted, it has not indicated any intention to do so. *See* 37 C.F.R. § 42.122. New Balance would have to seek joinder within one month of institution. *See id.* ("Any request for joinder must be filed, as a motion

---

[4] New Balance argues that Nike itself recently benefited from a pre-institution stay. Motion at 14 (citing *SherryWear, LLC v. Nike, Inc.*, 23-cv-11599, ECF No. 69 (D. Mass. Sept. 3, 2024). But the *SherryWear* case is factually inapposite. In *SherryWear*, Nike itself filed IPR petitions challenging all eight patents-in-suit and every asserted claim, and immediately thereafter moved for a stay. *Id.* at 1–2. Indeed, Nike represented in its briefing that simplification would be likely because "Nike would be estopped from presenting 'any ground that [it] raised or reasonably could have raised during' the IPR proceeding." *SherryWear, LLC*, ECF No. 61 at 10. And unlike here, the parties were not competitors, and SherryWear waited four years after learning of the alleged infringement to bring suit. *Id.* at 3.

[5] Through joinder of the Skechers IPRs, and upon issuance of a final written decision, New Balance would be estopped only from raising in district court the specific invalidity grounds that were raised in the IPR. *See Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1026–29 (Fed. Cir. 2020).

under § 42.22, no later than one month after the institution date of any *inter partes* review for which joinder is requested."). But New Balance had the opportunity to join lululemon's IPRs challenging the '484 and '749 patents which were instituted in March and August 2024, respectively, and declined to do so. Should the Court deny New Balance's Motion without prejudice, that may incentivize New Balance to seek joinder of Skechers' IPRs.

Any chance of simplification based on the lululemon IPRs and Skechers Petitions is further reduced by the chance that those parties will settle out. *See Lexos Media IP, LLC v. Overstock.com, Inc.*, 2023 WL 5625436, at *3 (D. Kan. Aug. 31, 2023) (denying stay based on third-party IPRs where "those proceedings may cease at any time without [Defendant's] involvement"). New Balance had the opportunity to file its own IPR petitions, and chose not to do so for seven of the nine Asserted Patents. This Court should not now entertain New Balance's attempt to delay Nike's day in court, while it stands by and watches these third-party IPRs unfold without facing any potential repercussions to its own invalidity case. *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F.Supp.3d 270, 275 (D. Mass. Mar. 10, 2016) (denying stay where defendant "is not a party to the IPR, and it has not offered to be bound by the estoppel attendant to IPR proceedings").

Fourth, New Balance touts general PTAB statistics in its Motion (Motion at 12–13), but fails to account for the relative strength of the Asserted Patents and the IPRs or petitions for IPR. *See Sonrai Memory Ltd. V. Micron Tech., Inc.*, No. 1:23-cv-01407, 2024 WL 5185357, at *3 (W.D. Tex. May 29, 2024) ("The degree to which [a case] will be simplified is a function of not just the scope of estoppel attached to [defendant], but also how many asserted claims will likely survive the FWDs."). As example, the '749 patent, which New Balance unsuccessfully challenged at the PTAB last year, already survived an IPR filed by adidas in 2016, and earlier this month was upheld as valid by a jury in the Southern District of New York. *See supra* § II.B. Further, Nike has

presented compelling arguments against every Skechers Petition as to why the Board should exercise its discretion to deny institution, including because the Patent and Trademark Office has already considered the same or similar prior art or arguments (during examination of the patent or during a previous IPR) as Skechers includes in its petitions. Harris Decl., Exs. G–K.

Fifth, in order to moot the invalidity and infringement issues in this case, the PTAB would need to find all of Nike's asserted claims unpatentable, and the Federal Circuit would need to affirm all of those decisions on appeal. *See* Harris Decl., Ex. M [*Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 2:22-cv-00293, ECF No. 710 at 5–6 (E.D. Tex. Jun. 11, 2024)] (denying stay where IPR for every asserted claim of three asserted patents had been instituted and one FWD had issued finding claims unpatentable, the court noting "[t]he only scenario in which the IPRs dispose of the entire case is if the PTAB invalidated all claims of all three asserted patents in suit and the Federal Circuit affirmed all these decisions on appeal"). If New Balance is unsuccessful in IPR or on appeal for any challenged claim of the '932 patent, IPR estoppel won't prevent lululemon from trying its invalidity theories based on product prior art, or based on 35 U.S.C. § 112 grounds in this case. Harris Decl., Ex. N at 27–28 (including various product prior art in '932 patent invalidity contentions), 41–42 (contending that various claim phrases are indefinite under § 112). And if Skechers or lululemon are unsuccessful in IPR or on appeal for any challenged claim of the '749, '484, '562, '636, or '511 patents, as discussed above, New Balance won't be estopped from trying any part of its invalidity theories in this case.

For these reasons, the first factor weighs against granting a stay.

### C. Factor Three: A Stay Will Prejudice Nike

The Court should also deny New Balance's Motion because a stay would prejudice Nike. Nike and New Balance are direct competitors. New Balance's continued infringement without any compensation or attribution to Nike is likely to harm Nike's market share and goodwill with

consumers. The prejudice is exacerbated by the fact that a stay pending resolution of the pending and pre-institution IPRs will last years, as the PTAB's rulings do not become final until affirmance, if any, by the Federal Circuit. Finally, New Balance's reliance on IPRs and pre-institution IPR petitions filed by third parties, in which New Balance has no involvement, implicates potential gamesmanship and further weighs against a stay.

There is no dispute Nike and New Balance are direct competitors in the athletic footwear marketplace. *See* Motion at 15; Harris Decl., Ex. O at 5 (naming New Balance as a competitor). The industry has also recognized this fact. *See* Harris Decl., Ex. P (listing New Balance as Nike's #2 competitor and alternative); *id.*, Ex. Q (naming New Balance as a Nike competitor); *id.*, Ex. R.

District courts place significant emphasis on the relationship between the parties, and are "generally reluctant to stay proceedings where the parties are direct competitors." *See Inari Med.*, 2025 WL 637958, at *3 (citing *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d, 783, 789 (D. Del. 2011); *see also InVue Sec. Prods. Inc. v. Vanguard Prods. Grp., Inc.*, 2019 WL 3958272, at *1 (M.D. Fla., Aug. 22, 2019) ("Prejudice against the non-movant is probably the most important factor to consider when determining whether a stay is appropriate."). The prejudice to a nonmovant "is heightened when parties to the litigation are direct competitors" and "in such cases, courts presume that a stay will prejudice the non-movant." *CDX Diagnostics*, 2014 WL 2854656, at *4 (quoting *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011)); *see also Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, 2022 WL 4240937, at *2 (W.D. Tex. Aug. 16, 2022) ("As competitors, prejudice is nearly inherent in granting a stay.").

The prejudice to a competitor like Nike here includes "the potential for loss of market share and an erosion of goodwill." *Teva Pharms. Int'l GmbH v. Eli Lilly and Co.*, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019) (citing *Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 424754, at

*2 (D. Del. Jan 31, 2013)); *see also Ravgen*, 2022 WL 4240937, at *2 ("[T]he longer that the other 'prominent players' in the market, such as [the defendant], continue to benefit from [the plaintiff's] inventions without attribution, the more customers and recognition [the plaintiff] will lose. Such harms constitute permanent loss of marketshare and goodwill.") (internal citations and quotations omitted).

New Balance's arguments to the contrary should be rejected. First, New Balance argues that there is minimal risk of prejudice to Nike because "New Balance and Nike are not the sole competitors" in the athletic footwear market. Motion at 15–16. But this argument is undermined by the only in-District case New Balance cites: In *Teva Pharms*, the court found that "[a]lthough the presence of other firms in the market decreases the likelihood of prejudice," "the fact that [the parties] are direct competitors in the market [] weighs against a stay." 2019 WL 1767394, at *8.

Second, New Balance argues Nike should have to submit evidence of competitor injury, for example to demonstrate that Nike has actually lost market share to New Balance to establish prejudice. Motion at 16–17. But loss of market share, brand recognition, and consumer goodwill are inherently difficult to quantify, which is why they support issuance of injunctive relief. *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (affirming permanent injunction—the "inherent difficulty of quantifying 'loss of market share, brand recognition, and customer goodwill'…indicates that 'remedies at law are inadequate.'").

Third, New Balance argues that any harm to Nike can be remedied by "[m]oney damages and, in appropriate cases, a permanent injunction." Motion at 17. New Balance contends that Nike cannot point to any delay in its recover of these remedies. *Id.* New Balance is wrong. As discussed above, a stay pending final resolution of any of the pending or pre-institution IPRs, inclusive of

exhaustion of appeals, will take years.[6] *See supra* § IV.B. And a stay will allow New Balance's infringement to continue unabated, prejudicing Nike in the form of potential lost market share, consumer goodwill, consumers, and recognition. *Neste Oil Oyj*, 2013 WL 424754, at *2; *Ravgen*, 2022 WL 4240937, at *2.

Fourth, New Balance argues Nike's failure to seek a preliminary injunction suggests it will not be unduly prejudiced by a stay. Motion at 17–18. But the fact that Nike did not seek a preliminary injunction against New Balance is not dispositive that Nike won't "suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case." *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, No. 2:19-cv-02754, 2020 WL 7865959, at *3 (W.D. Tenn. Nov. 24, 2020); *accord Universal Elecs.*, 943 F. Supp. 2d at 1034.

A stay would also prejudice Nike's ability to obtain discovery critical to its infringement case. New Balance routinely cycles through products, releasing new products and discontinuing old products. For example, New Balance no longer lists the Fresh Foam X 1080 v12, FuelCell MD-X, or XC Seven v4, among other accused products, as being for sale on its website. Harris Decl., Ex. S. Evidence of the methods of manufacture of New Balance's products—relevant to the claims of several of the Asserted Patents—is in the hands of New Balance's foreign manufacturers. That information may no longer be accessible from the manufacturers if this case is stayed. *See Parthenon Unified Memory Architecture LLC v. HTC Corp.*, 2016 WL 3365855, at *2 (E.D. Tex. June 17, 2016) (denying stay where "several of the 'accused products have [] been discontinued and portions of [Plaintiff's] evidentiary proof are from third-party source code that may no longer be available' at the end of a lengthy stay.").

---

[6] The median time to disposition for cases appealed to the Federal Circuit from the Patent Office in 2023 was 19 months. Harris Decl., Ex. L.

Finally, New Balance relies on pending or pre-institution IPRs filed by third-parties to its unfair tactical advantage. As discussed above for factor two, New Balance plans to stand by and watch these third-party IPRs unfold, with absolutely no skin in the game. A stay would postpone Nike's day in court without New Balance having to sacrifice anything at all. Indeed, New Balance will not have to litigate the third-party IPRs or any appeals resulting therefrom, and New Balance will not be bound by IPR estoppel. Courts in this District have found this fact to weigh even more heavily than competition of the parties. *Koninklijke Phillips*, 167 F.Supp.3d at 275 ("More persuasive [than the parties being competitors] is the fact that [Defendant] is not a party to the IPR, and it has not offered to be bound by the estoppel attendant to IPR proceeding."]; *see also Lexos Media*, 2023 WL 5625436.

For at least these reasons, Nike will be unduly prejudiced by a stay. Nike and New Balance are direct competitors. A stay would delay Nike's day in court—and its chance for monetary and injunctive relief and, just as importantly, attribution—for years. As the Federal Circuit has explained, "the patent property is a wasting asset, and justice is ill served by delay in final resolution." *Cont'l Can Co. USA*, 948 F.2d at 1266. Rather, "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Nike respectfully requests that the Court deny New Balance's Motion.

Dated: March 28, 2025          ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Michael J. Harris*
    Fred Kelly (Bar No. 544046)
    fred.kelly@arnoldporter.com
    ARNOLD & PORTER KAYE SCHOLER LLP

200 Clarendon St., 53rd Floor
Boston, Massachusetts 02116
Telephone: (617) 351-8050

Christopher J. Renk (pro hac vice)
chris.renk@arnoldporter.com
Michael J. Harris (pro hac vice)
michael.harris@arnoldporter.com
Aaron Bowling (pro hac vice)
aaron.bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300

Lindsey C. Staubach (pro hac vice)
lindsey.staubach@arnoldporter.com
Kathleen P. Duffy (pro hac vice)
kathleen.duffy@arnoldporter.com
Miranda Hallett (pro hac vice)
miranda.hallett@arnoldporter.com
Joseph M. Galvin (pro hac vice)
joseph.galvin@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745

*Attorneys for Plaintiff Nike, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on March 28, 2025, I caused a true and correct copy of **NIKE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO NEW BALANCE'S MOTION TO STAY PENDING *INTER PARTES* REVIEW** to be served via ECF on the registered participants identified on the Notice of Electronic Filing.

*/s/ Timothy Haugh*
For Plaintiff Nike, Inc.