# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NIKE, INC., ) | |
| Plaintiff, ) | |
| v. ) | No. 1:23-cv-12666-JEK |
| NEW BALANCE ATHLETICS, INC., ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER ON DEFENDANT'S
### MOTION TO STAY PENDING *INTER PARTES* REVIEW

**KOBICK, J.**

Plaintiff Nike, Inc. alleges in this case that defendant New Balance Athletics, Inc. has infringed nine of its patents directed to its Flyknit footwear technology: U.S. Patent Nos. 8,266,749 (the "'749 patent"), 8,898,932 (the "'932 patent"), 9,060,562 (the "'562 patent"), 9,510,636 (the "'636 patent"), 9,730,484 (the "'484 patent"), 9,907,350 (the "'350 patent"), 9,918,511 (the "'511 patent"), 9,924,758 (the "'758 patent"), and 11,707,105 (the "'105 patent"). New Balance and non-party shoe sellers lululemon and Skechers have collectively filed nine petitions for *inter partes* review regarding six of these patents—the '932, '749, '484, '562, '636, and '511 patents—with the U.S. Patent and Trademark Office ("USPTO"). On March 21, 2025, the Patent Trial and Appeal Board ("PTAB"), an adjudicative body within the USPTO, issued a final written decision finding the '484 patent claims unpatentable in a matter brought by lululemon. Pending before the Court is New Balance's motion to stay this case until August 9, 2025, by which date the PTAB will have issued institution decisions for the '484, '511, '562, '636, '749, and '932 patents in matters brought

by New Balance or Skechers, as well as a final written decision for the '749 patent in a matter brought by lululemon. For the reasons that follow, the Court will grant the motion.

## BACKGROUND

**I.     The *Inter Partes* Review Process.**

Created by the 2011 Leahy-Smith America Invents Act, the *inter partes* review ("IPR") process aims to "improve patent quality and limit unnecessary and counterproductive litigation costs." *Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1297-98 (Fed. Cir. 2020) (quotation marks omitted). Through IPR, the USPTO may "reconsider whether existing patents satisfy the novelty and nonobviousness requirements for inventions." *United States v. Arthrex, Inc.*, 594 U.S. 1, 8 (2021); *see* 35 U.S.C. § 102 (novelty); *id.* § 103 (non-obvious subject matter). The process "was designed to give the agency an opportunity to correct its mistakes, to give courts the benefit of the agency's consideration of the effect of prior art on patents being asserted in litigation, and to reduce the burden of litigation on the parties and the courts." *In re Intel Corp.*, No. 2021-168, 2021 WL 4427875, at *2 (Fed. Cir. Sept. 27, 2021).

By statute, a defendant in a patent infringement lawsuit has one year from the date of service of the complaint to request IPR on the patents at issue. 35 U.S.C. § 315(b). An IPR is instituted when the PTAB determines, based on the petition and any response, that there is "a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." 37 C.F.R. § 42.108(c); *see* 35 U.S.C. § 314(a). This institution decision is "final and nonappealable." 35 U.S.C. § 314(d). If institution is granted, the IPR proceeding begins. The PTAB will review the patent claims and may "cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs. v. Lee*, 579 U.S. 261, 265 (2016). The PTAB must issue a final written decision no later than one year after the institution decision, though that period may be extended

by six months for good cause. 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c). The PTAB's final written decision may be appealed to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 319.

**II.     Factual and Procedural Background.**

Nike is in the business of designing, developing, marketing, and selling athletic footwear, apparel, and equipment. ECF 1, ¶ 10. Its investments in research, design, and development have led to innovations such as its Flyknit technology, which provides a way to design and manufacture the top part of a shoe, called the "upper." *Id.* ¶¶ 1, 10. This case concerns nine of Nike's patents—the '749, '932, '562, '636, '484, '350, '511, '758, and '105 patents—directed at manufacturing methods, shoe components, and shoes that incorporate this technology. *Id.* ¶¶ 11, 22, 31, 39, 48, 56, 64, 72, 80, 88.

Nike alleges that 61 New Balance products infringe these patents. ECF 83-4, at 3-4. In January, March, and September 2023, Nike sent New Balance letters claiming infringement. ECF 1, ¶¶ 13-15; ECF 1-1 to 1-3. Nike then initiated this action on November 6, 2023, alleging infringement of its nine patents, literally or under the doctrine of equivalents. ECF 1, ¶¶ 21-94. After denying New Balance's partial motion to dismiss with respect to three of the patents in August 2024, the Court set a *Markman* hearing for June 20, 2025; a fact discovery deadline of December 19, 2025 or 60 days after the *Markman* order, whichever is later; an expert discovery deadline of within 90 days of the close of fact discovery; and a dispositive motion and *Daubert* motion deadline of within 30 days of the close of expert discovery. ECF 51, 65. Since then, the parties have engaged in initial fact discovery. Both sides served one set of interrogatories in September 2024, and document production has begun. ECF 90, ¶¶ 5-6. In addition, after Nike served its initial infringement claim charts on New Balance on October 11, 2024, ECF 83, ¶ 7;

ECF 83-4, New Balance timely filed an IPR petition for the '932 patent (IPR2025-00020) with the PTAB before its November 8, 2024 deadline, ECF 83, ¶ 15.

In mid-March 2025, roughly four months after filing its IPR petition, New Balance moved to stay this case until at least August 9, 2025. ECF 81. Eight IPR decisions, regarding six of the nine patents at issue in this case, bear on New Balance's motion. Only one of these—the IPR petition for the '932 patent—was filed by New Balance.[1] That petition is still pending, and an institution decision is due on June 20, 2025. ECF 82, at 4. Skechers is also awaiting institution decisions for five IPR petitions that it filed against the '749 patent (IPR2025-00141), the '484 patent (IPR2025-00142), the '562 patent (IPR2025-00150), the '636 patent (IPR2025-00151), and the '511 patent (IPR2025-00144). *Id.* at 5. Those decisions are due on June 20 and 23, 2025. *Id.* Lululemon has one pending IPR petition challenging the '749 patent (IPR2024-00460), for which a final written decision is due by August 9, 2025. *See* ECF 83-2 (granting institution of IPR). Recently, the PTAB issued a final written decision in another IPR brought by lululemon, finding by a preponderance of the evidence that claims 1 through 19 of the '484 patent are unpatentable as obvious. *See lululemon USA Inc. v. Nike, Inc.*, No. IPR2023-01460, at 27 (P.T.A.B. Mar. 21, 2025).

On May 8, 2025, the Court held a hearing on New Balance's motion to stay this action until August 9, 2025, by which point the PTAB will have issued institution decisions for the New Balance and Skechers IPRs and a final written decision for lululemon's IPR on the '749 patent. ECF 104. After the hearing, the Court took the motion under advisement.

---

[1] New Balance had previously filed another IPR petition regarding the '749 patent (IPR2024-00778), which was denied institution on September 26, 2024. ECF 90-3.

4

## DISCUSSION

The Court has the inherent power to manage its own docket, including by issuing a stay of proceedings pending IPR. *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). This decision is "committed to the sound discretion of the trial court." *In re Corel Software LLC*, 778 F. App'x 951, 953 (Fed. Cir. 2019); *see In re Body Sci. LLC Patent Litig.*, No. 12-cv-10536-FDS, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012) (recognizing a "'liberal policy'" in favor of granting stays pending patent reexamination (citation omitted)). Courts ordinarily analyze three factors to determine whether a stay pending IPR is appropriate: (1) the stage of the proceedings; (2) the potential for the stay to simplify issues in the case; and (3) whether a stay will impose undue prejudice on the non-moving party or give the moving party a clear tactical advantage. *See Murata Mach.*, 830 F.3d at 1359-60.

### I.    Stage of the Litigation.

When assessing the stage-of-litigation factor, courts look to "whether discovery is complete and whether a trial date has been set," *id.* at 1361 (quotation marks omitted), as well as whether "'substantial proceedings' in the case [have] yet to be completed," *In re Corel Software LLC*, 778 F. App'x at 953. In general, "'[t]he earlier the stage of proceedings, the greater the reason to grant a stay.'" *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015) (quoting *SurfCast, Inc. v. Microsoft Corp.*, No. 12-cv-333-JDL, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014)).

This case is still in the early stages of litigation. Fact discovery is underway but is not far along: as of the date of New Balance's motion, Nike had produced approximately 53,792 documents, New Balance had produced approximately 11,273, and both parties had exchanged one set of interrogatories. ECF 83, ¶¶ 9-11; ECF 90, ¶¶ 5-6; *see VirtualAgility Inc. v.*

*Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014) ("Generally, the time of the motion is the relevant time to measure the stage of litigation."). Nike contends that this amounts to significant document discovery, but New Balance's attorney avers that "[t]he vast majority of these documents were already produced in prior litigations," ECF 83, ¶ 10, so "at least some of the cost that [Nike] has incurred in document discovery would have been incurred irrespective of the case against [New Balance]," *ACQIS, LLC*, 109 F. Supp. 3d at 356. At least nine months of fact discovery remained as of the date of New Balance's motion, and the parties had not yet noticed or taken any fact or expert depositions. ECF 82, at 3. Thus, "'the most burdensome stages of the cas[e]—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.'" *DiversiTech Corp. v. RectorSeal, LLC*, No. 20-cv-11896-NMG, 2021 WL 2953324, at *2 (D. Mass. July 14, 2021) (quoting *NST Glob., LLC v. SIG Sauer Inc.*, No. 19-cv-792-PB, 2020 WL 1429643, at *2 (D.N.H. Mar. 24, 2020)). And while the parties have already devoted time and effort to briefing claim construction, *see* ECF 77-80, 85-88, the *Markman* hearing has not yet occurred, summary judgment and *Daubert* motions are not due until April 2026 at the earliest, and no trial date has been set. Under the circumstances, this factor weighs heavily in favor of a stay. Indeed, other courts have granted stays in cases considerably farther along than this case. *See ACQIS, LLC*, 109 F. Supp. 3d at 357 (collecting cases where stays were granted when discovery was complete and claim construction orders had been issued).

II.     **Potential Simplification of the Issues.**

The second factor concerns "whether a stay will simplify the issues in question and trial of the case." *Murata Mach.*, 830 F.3d at 1361 (quotation marks omitted). The IPR process can simplify court cases in several ways. *See In re Body Sci.*, 2012 WL 5449667, at *2-3 (listing seven

advantages of granting a stay pending reexamination of a patent). Most notably, "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *see SHFL Ent., Inc. v. DigiDeal Corp.*, 729 F. App'x 931, 934 (Fed. Cir. 2018) (affirming district court's mootness determination when "originally asserted claims of the patent were cancelled as a result of" patent reexamination). Simplification may also occur if the claim is not cancelled or amended. If the IPR results in a final written decision, the IPR petitioner is estopped from asserting "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2); *see Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1251 (Fed. Cir. 2019). A final written decision will also be binding on non-petitioners that join an instituted petition, though only on the invalidity grounds raised under that IPR petition. *See Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1027 (Fed. Cir. 2020). And in some cases, a defendant that has neither joined nor instituted its own IPR may "simply declar[e] that it will be bound by the full scope of statutory estoppel applicable to the particular IPR." *Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*, No. 18-cv-9344-GW-JCx, 2019 WL 11717183, at *4 n.5 (C.D. Cal. May 14, 2019).

      The New Balance, Skechers, and lululemon IPRs that are pending and awaiting institution decisions have the potential to simplify the issues in this case. This case involves a number of patent claims and accused footwear products. Though Nike argues that only six claims are disputed, the number of accused products may change dramatically if some or all of the patents are invalidated. ECF 83, ¶¶ 12-14; ECF 83-4, at 2-3. By August 9, 2025, the parties will know whether the PTAB has found the '749 patent claims unpatentable in lululemon's IPR. The PTAB

has already, as discussed, deemed the '484 patent claims unpatentable in a separate lululemon IPR. *See lululemon USA Inc.*, No. IPR2023-01460. Invalidation of these two patents alone would reduce the number of accused products in this case from 61 to approximately 25. ECF 83, ¶ 14; ECF 83-4, at 2-3. A similar outcome would obtain if the PTAB were to institute IPRs in the Skechers matters and the '484, '749, '511, '562, and '636 patent claims were invalidated through those proceedings. ECF 83, ¶ 13; ECF 83-4, at 2-3. The Court thus agrees with New Balance that the IPR process may very well simplify the issues through possible invalidation or narrowing of the disputed claims.

Nike disputes this conclusion, contending that a stay is not warranted because the three patents in this case not subject to IPR challenges—the '350, '758, and '105 patents—would be left to languish on the docket. *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 274-75 (D. Mass. 2016) (noting that the "IPR addresses only two of the six patents-in-suit, and there is no indication that the two patents subject to review constitute the gravamen of [the plaintiff's] case"). But New Balance's request for a stay extends only until August 9, 2025, at which time the parties and Court will know more about the breadth of instituted IPRs involving Nike's challenged patents. The three remaining patents will hardly be languishing during the short time between this decision and August 2025. It makes little sense to proceed with the *Markman* hearing, and have the parties incur additional discovery costs in the meantime, when two-thirds of the patents at issue here may be subject to IPR. Moreover, "[o]ther courts have granted stays even where . . . the IPR proceedings do not involve all asserted patents or claims." *ACQIS, LLC*, 109 F. Supp. 3d at 357-58 (collecting cases and holding that this factor "weigh[ed] slightly in favor of a stay" because of the "significant overlap among the patents-in-suit, and between the claim elements of the claims under review in the IPRs and those found in each of the remaining 19 claims," even though not all

of the claims and patents involved in the case were under review); *see also In re Body Sci.*, 2012 WL 5449667, at *5 ("[T]he question is not whether the reexamination will clearly eliminate all need for a trial; rather, it is whether the reexamination is likely to simplify the issues for trial.").

Nike next contends that, as to the New Balance and Skechers petitions, any chance of simplification is reduced because the PTAB has not yet instituted review. Nike therefore requests that the Court deny the motion without prejudice to renewal in the event that the PTAB decides to grant institution. While some courts have held that, pre-institution, "any simplification which might be gained by *inter partes* review is . . . mostly a matter of conjecture," *Mizuho Orthopedic Sys., Inc. v. Allen Med. Sys., Inc.*, 610 F. Supp. 3d 362, 366 (D. Mass. 2022), "that rule is 'hardly universal' and many other courts have stayed cases before the institution of IPR," *DiversiTech Corp.*, 2021 WL 2953324, at *3 (quoting *NST Glob., LLC*, 2020 WL 1429643, at *4 (collecting cases)). Here, it makes little sense to proceed with the *Markman* hearing when one of Nike's patents at issue has recently been deemed unpatentable by the PTAB, another is under review, and the institution decisions for the six Skechers and New Balance petitions are imminent. Again, New Balance is requesting a stay only until August 9, 2025, at which point the parties and Court will know whether institution decisions have been granted as to the Skechers and New Balance IPRs and whether the PTAB has determined the '749 patent claims to be unpatentable in the lululemon IPR. At that time, the parties and Court will be in a better position to consider whether the stay should be extended in light of the PTAB's decisions.

Nike finally argues that because New Balance is not a party to the Skechers petitions, it will not be subject to statutory estoppel under 35 U.S.C. § 315(e)(2). Thus, according to Nike, simplification would be "unlikely to occur for several years," as "[a]ny simplification . . . would come only from a finding of unpatentability after all appeals are exhausted." ECF 89, at 10. Nike

9

also argues, for similar reasons, that the recent lululemon IPR decision finding the '484 patent unpatentable "will not simplify anything," so long as it remains appealable. ECF 101, at 4. But whether a stay pending IPR may lead to simplification does not turn only on the immediate availability of collateral or statutory estoppel. The benefits of staying litigation pending patent reexamination include: (1) the USPTO's "particular expertise"; (2) management of discovery issues relating to the prior art; (3) likely dismissal when IPR results in "effective invalidity of the patent"; (4) increased chance of settlement based on the outcome of IPR; (5) development of an IPR record, which would likely simplify trial; (6) limited issues, defenses, and evidence in pretrial conferences; and (7) reduced litigation costs. *In re Body Sci.*, 2012 WL 5449667, at *2-3. And in any event, the deadline for New Balance to seek leave to join the Skechers IPRs has not passed; New Balance will have one month after a decision instituting those IPRs to decide whether to request joinder. *See* 35 U.S.C. § 315(c); 37 C.F.R. § 42.122(b). Should it do so, New Balance may indeed be estopped from raising in this Court any ground that Skechers raised before the PTAB. *Network-1 Techs., Inc.*, 981 F.3d at 1027. Accordingly, the second factor also strongly weighs in favor of a stay.

**III.**     **Undue Prejudice or Clear Tactical Disadvantage.**

The third factor concerns "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Murata Mach.*, 830 F.3d at 1361 (quotation marks omitted). That a stay would delay resolution of the lawsuit does not by itself amount to undue prejudice. *See InMode Ltd. v. BTL Indus., Inc.*, No. 24-cv-12955-PBS, 2025 WL 926481, at *1 (D. Mass. Mar. 27, 2025). The patentee must instead demonstrate "undue prejudice separate from the delay," such as, for example, "that 1) on account of the delay it effectively will be denied certain

legal remedies, 2) the moving party possesses a dilatory motive or 3) the parties are direct commercial competitors." *Mizuho Orthopedic Sys.*, 610 F. Supp. 3d at 365.

Nike contends that it will suffer undue prejudice from a stay of this action because New Balance's continued infringement will threaten its market share, brand recognition, and consumer goodwill, as New Balance is its direct competitor. "Stays are disfavored in cases involving direct competitors because 'there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill.'" *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029-ADB, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019) (quoting *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-cv-01744-GMS, 2013 WL 3353984, at *3 (D. Del. July 2, 2013)). But though Nike and New Balance are direct competitors, Nike has not demonstrated that any prejudice it may experience from New Balance's ongoing competition warrants denial of the stay. There are other competitors in the athletic footwear market, which may mitigate any loss of market share or goodwill. *Id.* (noting that "the presence of other firms in the market decreases the likelihood of prejudice"). And Nike has not, in any event, introduced competent evidence, through affidavit or otherwise, that staying this action will in fact occasion these harms. Nor has Nike offered evidence that these harms could not be addressed by money damages if it were to ultimately prevail on its infringement claims. *See Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 15-cv-30005-MGM, 2016 WL 1735330, at *4 (D. Mass. Apr. 28, 2016). Even accounting for the "inherent difficulty of quantifying 'loss of market share, brand recognition, and customer goodwill' and of estimating monetary damages," Nike has not made a sufficient showing that the mere fact of its competition with New Balance will impose undue

prejudice. *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)).

Nike separately argues that "a stay pending final resolution of any of the pending or pre-institution IPRs, inclusive of exhaustion of appeals, will take years," and that evidence regarding the manufacture of New Balance products, which is in the hands of New Balance's foreign manufacturers, may be lost as New Balance cycles through new products. ECF 89, at 14-15. But New Balance has asked for a stay only through August 9, 2025, at which point the Court will consider whether a further stay of the case is warranted. And New Balance further committed at the motion hearing to continue collecting evidence from its overseas manufacturers while a stay is in place in order to address Nike's concern about the loss of evidence.

Nike also charges that New Balance's conduct demonstrates gamesmanship because New Balance did not file its motion to stay in November 2024, when all of the IPRs at issue were on file, but instead waited until mid-March 2025 to do so, in the middle of the parties' claim construction briefing. Nike further faults New Balance for filing only two IPR petitions, one of which was denied institution, and for relying on third-party IPRs. While New Balance will be estopped from asserting invalidity in this action based on any ground it raised or could have raised in its own IPR should that IPR reach a final written decision, *see* 35 U.S.C. § 315(e)(2), it will not, at present, be statutorily estopped from asserting invalidity based on grounds raised in the Skechers and lululemon IPRs. New Balance may later seek leave to join the Skechers IPRs, but it elected not to join the lululemon petitions, and its time to do so has expired. *See* 37 C.F.R. § 42.122(b). The Court agrees with Nike that this conduct evinces some gamesmanship: New Balance seeks to reap the benefits of a stay pending IPR proceedings even though it refused to commit to being bound by at least some of those proceedings. *See Koninklijke Philips N.V.*, 167 F. Supp. 3d at 275

12

(denying stay, in part based on the "fact that [the defendant] is not a party to the IPR, and it has not offered to be bound by the estoppel attendant to IPR proceedings" (citing 35 U.S.C. § 315(e)(2)). In general, where courts conclude that cases should be stayed in light of third-party IPRs, "the defendants have agreed to be bound by the IPR estoppel provisions of 35 U.S.C. § 315(e)(2)." *Polaris PowerLED Techs., LLC v. Dell Techs. Inc.*, No. 22-cv-973-RP, 2024 WL 1546973, at *2 (W.D. Tex. Mar. 5, 2024) (collecting cases where courts granted stays pending IPR, conditioned on the defendants being bound by IPR estoppel).

New Balance responds that any prejudice to Nike is at least partially offset by the fact that five of the nine asserted patents have either expired (the '749, '350, '511, and '758 patents) or been determined unpatentable by the PTAB (the '484 patent). For that reason, New Balance argues, Nike cannot demonstrate that any actions related to the expired patents will cause it competitive harm during the stay. *See Raytheon Co. v. Samsung Elecs. Co., Ltd.*, No. 15-cv-341-JRG-RSP, 2016 WL 11639659, at *1 (E.D. Tex. Feb. 22, 2016) ("The asserted patent is expired, and thus there is no possibility of continuing harm to [the plaintiff] from infringement. [The plaintiff] can only recover damages for past infringement, so prejudgment interest can adequately redress any delay."). Moreover, New Balance points out, the requested stay would last only a few months. *Cf. Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co., Ltd.*, No. 17-cv-01914-CJC-JPR, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) ("a mere four-month stay" would not be prejudicial even where parties were direct competitors).

Balancing these considerations, the Court concludes that Nike will not be unduly prejudiced by a stay. While the parties' positions as direct competitors may result in some prejudice to Nike, "a stay can cause some prejudice to [a] plaintiff without constituting *undue* prejudice." *In re Body Sci.*, 2012 WL 5449667, at *4. Under the circumstances—including the lack of evidence

regarding harm that Nike will suffer, the brevity of the stay, and New Balance's commitment to continue collecting discovery from its foreign manufacturers—Nike has not "show[n] undue prejudice separate from the delay itself." *See Mizuho Orthopedic Sys.*, 610 F. Supp. 3d at 365. The slight prejudice that Nike claims it will face as a result of the stay does not outweigh the fact that this litigation is in its early stages and that the seven IPR decisions that will issue by August 9, 2025 may considerably simplify the issues before the Court. Accordingly, a stay of this action until August 9, 2025 is warranted.

## CONCLUSION AND ORDER

For the foregoing reasons, New Balance's motion to stay this case pending *inter partes* review, ECF 81, is GRANTED. This action is stayed in its entirety until August 9, 2025.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2025

14